Parret v. Shaubhut.

---

ABINGTON PARRET, HULDAH PARRET, and CHARLES THOMPSON, Plaintiffs in Error, against JOHN J. SHAUBHUT, and HENRY SHAUBHUT, Defendants in Error.

### ERROR TO THE DISTRICT COURT OF BLUE EARTH COUNTY.

When a party desires to purchase, or take an incumbrance upon, land, his guide as to the title is the records of the county: the record of a deed is notice of its contents only so far as the record discloses it. If the record contains any instrument which is not authorized to be recorded, either from the nature of its subject matter or a defect in its execution, it is a mere nullity, and is not notice for any purpose. And where, in recording a mortgage, the Register of Deeds omitted one of the two attesting witnesses, (who had signed in accordance with *Stat. of Min., p.* 398, *sec.* 8,) and the mortgage appeared upon the record to have been executed in the presence of but one witness, *Held,* that the record was no notice to a subsequent incumbrancer of the mortgaged property.

The equitable doctrine that a party may have relief from his acts when done under an ignorance of facts, has no application to questions of this character, where the want of notice must be decided upon the registry acts alone; but obtains in cases of sales of property where some fact, known to the vendor and unkown to the vendee, which would materially influence the sale, is suppressed, and the vendee is free from any obligation or duty to discover the fact.

Points and Authorities of Plaintiffs in Error.

*First.*—The mortgage to Thompson, bearing date June 8, 1858, was the first and oldest lien or incumbrance upon the

premises. It has never been satisfied nor extinguished. It is therefore entitled to priority. *Edwards on Bills and Prom. Notes*, 550–552. 1 *Hilliard on Mort.*, ch. 17, secs. 7, 10, 11, 11 *b*, 12; 8 *B. Mon.* 287; 14 *Conn.* 334, 472; 16 *Pick.* 22; (24); 4 *John. Ch. Rep.* 65; 3 *Barb. Ch.* 293; 13 *Sm. and M.* 373; 9 *Mass.* 242 (247); 20 *John.* 407; 8 *John* 54; 12 *How. U. S.* 327; 4 *Sand. Ch.* 57; 1 *Edward's Ch.* 233; 1 *Hilliard on Mort. Ch.* 17, sec. 8; 5 *How. Miss.* 296; 5 *John. Ch.* 268; 1 *N. H.* 333; 27 *Maine*, 237; 4 *Kent's Com.* 173, 174; 12 *How. U. S.* 24; 2 *Y. and Coll. Ch.* 31; 3 *Conn.* 161; 33 *Miss.* 173.

*Second.*—Thompson, through mistake and ignorance of facts, was led to cancel upon the record his first mortgage, which, had he known the facts as they really were, he would not have done—that is, through mistake and ignorance of facts, Thompson did what he did not intend to do. He is therefore entitled to relief as against acts thus done. 1 *Story's Eq. Jur.* secs. 117, 118, 143, 145, where reference is made to 2 *Ves. Sen.* 304; 1 *How. Pr. Rep.* 112; 6 *Paige*, (202).

*Third.*—Thompson was, through fraud and deceit, induced to cancel his first mortgage upon the record. Said cancellation is therefore void and of no effect. 2 *Kent's Com.* 482, 483, *and note b;* 4 *Kent's Com.* 174 *note c.,* supported by 6 *Yerger, Tenn.* 108; 1 *Story's Eq. Jur.,* secs. 208, 217; 3 *Barn. & Cress.* 605; 13 *John.* 325; 1 *Story's Eq. Jur.,* secs. 308, 323, 117, 118.

*Fourth.*—The Defendants in error are not *bona fide* purchasers for a valuable consideration and without notice. The mortgage to Thompson, dated June 8, is therefore to take precedence of the mortgage to the Shaubhuts. *Cowen's Tr.* sec. 615, supported by 19 *Wend.* 514; 1 *Story's Eq. Jur.,* secs. 139, 397; 17 *Wend.* 25; 4 *Kent's Com.* 456; 15 *John.* 555, (588), 10 *John.* 457; 4 *Paige*, 215.

*Fifth.*—Courts of Equity have power to, and will revive, a mortgage cancelled through mistake or ignorance of fact or fraud. *Willard's Eq. Jur. p.* 78, supported by 5 *Ves.* 173; 9 *Ves.* 275; 1 *Hilliard on Mort.*, ch. 17, sec. 84; 1 *Barb. S. C. Rep.* 392, 75; 1 *Story's Eq. Jur.,* sec. 167; 23 *Maine*, 388; 1 *Hilliard on Real Prop. p.* 488, sec. 44.

*Sixth.*—The equities in this case are not equal. Thompson has the superior equity. 1 *Story's Eq. Jur.,* secs. 414, 395, 397, 400, 400 *a; Comp. Stat., p.* 404, *sec.* 1; *Ib. p.* 400, *sec.* 24.

*Seventh.*—The record of a deed or other conveyance of land is constructive notice only of the contents of such conveyance as it appears upon record. The record of a deed, deficient in any statutory requisite, is no notice whatever. The presumption is, that the deed was correctly recorded. Thompson cannot be presumed to have even constructive notice of any valid incumbrance of Defendants in error at the time he cancelled his first mortgage upon the record. 1 *Story's Eq. Jur., sec.* 404; 1 *Hilliard on Mort., ch.* 25, *sec.* 7; 14 *Conn.* 135; 8 *Conn.* 549; 2 *Hilliard on Real Prop., p.* 454, *sec.* 43, supported by 2 *Blackf.* 33; 2 *Scam.* 316, 374; 4 *Kent's Com.* 457, 174, supported by 3 *Cranch,* 140; 1 *John. Ch.* 300; 2 *Cow.* 246, 296; 1 *McLean Rep.* 450, 520; *Comp. Stat. of Min.* 398, (8), 404, (57); 6 *Barb. S. C. R.* 37.

Points and authorities of Defendant in Error.

I.—1st. The mortgage of Defendants in error being prior to the mortgage of Charles Thompson, Plaintiff in error, and having been recorded a long time prior thereto, is the first lien and incumbrance upon the premises.

2d. The mortgage of Defendants in error was properly executed, it having been signed, sealed and properly acknowledged, as required by statute—*Pub. Stat., p.* 397, *sec.* 1. The mortgage having been acknowledged as required by Statute was entitled to record—*Ib. p.* 400, *sec.* 26. *Sec.* 8, *ch.* 35, *p.* 398, *Pub. Stat.* in requiring two witnesses, is directory merely. 6 *Barbour's S. C. Rep., p.* 37-42; and if properly acknowledged is entitled to record—*sec.* 51, *ch.* 35, *p.* 404, *Pub. Stat.; sec.* 60, *p.* 405, *Ib.*

II.—1st. The mortgage of the Defendants in error having been duly recorded in the proper county, is constructive notice to all parties of its existence, and they are bound by it; and this rule is much more rigid under our statutes, and the late decisions, than it formerly was. *Willard's Eq. Jur., p.* 46; *Frost vs. Beekman, John. Ch. R., pp.* 288, 299; *Johnson vs. Stagg,* 2 *Johnson Rep.* 509; *Jackson vs. Dubois,* 4 *John.*
40

*Rep.* 216; *Jackson vs. Gun et al*, 8 *John. R.* 137; *Seeman vs. Street*, 1 *Cowen. R.* 593; *Jones vs. Many*, 2 *Cowen, R.* 246; *Story's Eq. Jur.*, secs. 401–403, and cases cited.

2d. The first mortgage of Thompson was cancelled and satisfied of record long after the execution and recording of Shaubhut's mortgage. Thompson had constructive notice of Shaubhut's mortgage, and he cannot now deny notice, but must have acted with the full knowledge of the Shaubhut mortgage. *Story's Eq. Jur.*, sec. 399; *Williamson vs. Brown, N. Y. Court of Appeals Rep.* vol. 15, (1 *Smith's*,) pp. 354–359. The Court of Equity will not, even if it had the power, revive it, and set aside the cancellation, and give the new mortgage priority over other incumbrances. *Willard's Eq. Jur.* 303, 304; 1 *Hilliard on Mortgages*, 585; 1 *John. Ch. R.* 398, 394.

3d. Thompson discharged his mortgage at his own instance. He was the party to be benefited by the change, he having received another mortgage and for a large amount, and by renewing the note and mortgage received a higher rate of interest than by the old mortgage. There could be no fraud upon Thompson, and *none* is proved ; and Thompson risks the chances of bettering or worsting his condition by such change. The debt of Shaubhut's against Parret having accrued long prior to the second mortgage and cancellation of the first by Thompson—Thompson's second mortgage being for a larger amount, and drawing a higher rate per cent. interest—it would have left Shaubhut's worse off, had the second mortgage of Thompson's been first made and recorded before Shaubhut's, and Shawbhuts could not have asked relief. Each party was anxious to secure his debt, and their equities are equal. The courts will allow the law to govern, and let it give to each party whatever benefit or advantage it will. *Willard's Eq. Jur.* 441; *Ib.* 45, 46, 59, 304; 13 *Vesey's R.* 114; *Story's Eq. Jur.* 109, 64, 106, 176, 413; 10 *Cowen. R.* 243.

4th. There can be no other grounds for letting in Thompson's mortgage to take priority over Shawbhut's, except that part of its amount was the old mortgage, and Thompson did not know of Shaubhut's mortgage, and did not find it on the record. If this was so, it shows a gross neglect on the part of Thompson. It was a fact that he was bound to know. If he

failed to examine the records, and through his own neglect and carelessness has made a mistake, the Courts of Equity will not interfere to relieve him. See *Willard's Eq. Jur.* 70, 71; 4 *Barbour's Sup. Ct. Rep.* 95–108; *Pary vs. Martin,* 4 *John. Ch. Rep.* 566; *Story's Eq. Jur.,* sec. 146, *n.* 2, *pp.* 105, 200; *Taylor vs. Fleet,* 4 *Barb. S. C. R.* 103; *Fendle vs. Martin,* 1 *McLean Rep.* 118; *Mesen vs. Bennett,* 8 *Paige's Rep.* 315–318; 2 *Kent's Com.* 484, 485; *Abbott vs. Allen,* 2 *John. Ch. Rep.* 523.

5th. The mistake, if any there was, was only on the part of Thompson, and owing to his own neglect or want of reasonable diligence, and no one else is culpable or guilty of fraud, and courts will not relieve in such cases. Courts of Equity will not give relief to one man as against another, when the first has, by his own fault, or mistake, placed himself in a worse and the other in a better situation, without any fraud, or misrepresentations, or fault of the latter. It falls within the rule *damnum absque injuria,* and the other principle that a party who becomes remediless at law by his own neglect should not be relieved in equity. *Willard's Eq. Jur. (title accident)* 59; *Story's Eq. Jur.,* sec. 109, *and cases there cited; Taylor vs. Fleet,* 4 *Barb. Sup. Court Rep.* 108; *Willard's Eq.* 69, 70, 71.

6th. The fact that there are no covenants in Shaubhut's mortgage, does not alter the case, as it conveyed all the title as well; and Thompson's first mortgage being released and canceled, Shaubhut would succeed to the whole or first estate incumbrance. *Nixon vs. Hysett,* 5 *John. R.* 58; *Johnson vs. Stagg,* 2 *John. Rep.* 510.

7th. Courts will in no case annul the cancellation or discharge of a mortgage on the ground of mistake merely, when other parties are affected by it, and where it was done voluntarily, without any fraud, &c. *Story's Eq. Jur.* 695; *Stewart vs. Kosen,* 11 *Barb.* 271–282.

8th. Thompson seeks to avoid his own cancellation of his first mortgage, duly executed, under his hand and seal, by his own parol testimony; as to mistakes and the setting aside of sealed or written instruments by parol testimony is and ought always to be discouraged by Courts, and is not and ought

never to be allowed except in the most extreme cases of fraud. *Story's Eq. Jur.* 154, *and cases cited; Ib.* 160.

9th. The Courts will not grant relief by dividing up the amount of the second mortgage and reinstating the former mortgage for that amount, upon the ground of cancellation through mistake, without strong evidence of such mistake, which must be fraud or some mistake which the party could not easily have ascertained and avoided, but will never find mistake a sufficient ground for such relief when it is a matter of record. The registry act was made for the express purpose of notice to subsequent purchasers and incumbrancers, and all the cases wherein Courts have granted such relief it was upon fraud or misrepresentations, or from some mistake that could have been avoided, like *Brown vs. Cranch,* 1 *Barbour's Sup. Court Rep.* 329; *Hyde vs. Tanner, Ib.* 76, and cases cited by counsel for Thompson, none of which cases are parallel with this.

TOURTELLOTTE & PITCHER, Counsel for Plaintiffs in Error.

WILLARD & BARNEY, Counsel for Defendants in Error.

*By the Court*—FLANDRAU, J. On the 8th day of June, 1858, Parret and wife executed a mortgage upon the land in question to Charles Thompson, to secure the sum of one thousand dollars, payable in one year, which mortgage was properly recorded.

On the 14th day of May, 1859, Parret and wife executed another mortgage upon the same premises to John J. and Henry Shaubhut, to secure the sum of four hundred and forty-nine dollars and sixty-nine cents, payable in two months; which mortgage was properly executed and delivered, but in the recording of the same the Register of Deeds omitted one of the attesting witnesses, and the same appeared upon record to have been executed in the presence of but one witness.

On the 15th day of July, 1859, Thompson voluntarily cancelled his mortgage of June 8, 1858, and took a new one for a greater amount, with interest at three per cent. per month. The consideration for the second mortgage taken by

Thompson was the first debt of one thousand dollars, with accumulated interest. This mortgage was duly recorded on the 16th day of July, 1859.

At the time Thompson took this second mortgage he had no notice of the existence of the Shaubhut's mortgage, except such as was conveyed to him constructively by the records.

The contest is for priority of lien between the mortgage of the Shaubhuts and the second mortgage of Thompson. On the trial below, before the Court, without a jury, several questions were raised by the Defendant Thompson. He claimed to have acted, in cancelling his mortgage, in ignorance of the fact that another mortgage had intervened in favor of third parties; and also, that he was induced by fraud to cancel his first mortgage. Both of these points were found against him by the Court, and we think correctly, upon the theory which obtained with the Court in the decision of the case. If the Shaubhut mortgage was well recorded, Thompson could not successfully allege ignorance of its existence. The equitable doctrine that a party may have relief from his acts when done under an ignorance of facts, has no application to questions of this character, at least when the rights of third parties would be affected, but obtains in cases of sales of property, where some fact known to the vendor and unknown to the vendee, which would materially influence the sale, is suppressed—as if a man should sell a house, situated in a distant town, which he knew at the time to be burned down, and of which fact the vendee was ignorant—the vendee, in such case would be entitled to a redhibition of the contract. In such cases the fact suppressed must be peculiarly within the knowledge of one party and impose upon him an obligation in good conscience to disclose it, and not within the knowledge of the other, who must also be free from any obligation or duty to discover it. 1 *Story's Eq.*, sections 208 to 217. This case does not present a question involving this doctrine. The ignorance of the Defendant, Thompson, as to the mortgage of the Shaubhuts must be decided upon the registry acts alone.

The claim that Thompson was induced to cancel his first mortgage by fraud is not sustained by the proof, and the

Court was clearly right in finding both these points against him.

The real question in the case is whether the record of the Shaubhut mortgage was notice for any purpose. The Statutes of this State concerning the execution of conveyances of real estate, require that they "shall be executed in the presence of two witnesses who shall subscribe their names to the same as such." *Comp. Stat. page* 398, *sec.* 8. To make a deed of any interest in real estate good as against subsequent purchasers, in good faith and for a valuable consideration, of the same real estate, the deed must be recorded. *Comp. Stat. page* 404, *sec.* 54. To entitle a deed to record, it must be executed, and acknowledged by the party executing the same as required by law, *Id. page* 404, *sec.* 57, and there is the further provision on *page* 405, *sec.* 60, making it a misdemeanor for any Register of Deeds to record "any conveyance, mortgage, or other instrument, by which any interest in real estate is or may be in any way affected, unless the same shall have been duly signed and executed, and acknowledged according to law."

It is competent for the government to prescribe rules for the conveyance of lands within its jurisdiction, whether by deed, will or otherwise, and it can impose such restrictions as are deemed for the best interests of its subjects. It may provide that the title to lands shall not pass unless the deed or will is upon paper, stamped by the State. It may declare that the instrument shall be attested by one, two or more witnesses; and none of these requirements involve a greater exercise of authority than to say that the conveyance shall be in writing, as there is no reason except the Statutes why a man should not pass his real as well as his personal estate by parol merely.

That statutes requiring certain solemnities to attend the execution of conveyances are imperative, and must be complied with, to give validity to them, is illustrated by the action of Courts in annulling wills and conveyances of land frequently for the want of a seal or other essential formality. That our Legislature has always considered a departure from the Statute forms, as invalidating conveyances, is found in

the fact that a series of acts have been passed year after year, to save such as are defectively executed, while the same Legislatures have steadily adhered to the forms first prescribed, and even added greater restrictions. *Act of March* 4, 1854, *Comp. Stat.* 402; *Act of Feb.* 6, 1856, *Comp. Stat.* 406; *Act of July* 26, 1858, *Comp. Stat.* 403–4; *Act Aug.* 3, 1858, *Comp. Stat.* 404–5.

When a party desires to purchase or take an incumbrance upon land, his guide as to the title is the records of the county, and it is a well settled rule that the record of a deed is notice only of its contents so far as the record discloses it. If the record contain any instrument which is not authorized to be recorded, either from the nature of its subject matter or a defect in its execution, it is a mere nullity and is not notice for any purpose. *In* 1 *Story's Equity, Jurisprudence, section* 404, this language is used in treating of the constructive notice conveyed by records. "But this doctrine, as to the registration of deeds being constructive notice to all subsequent purchasers, is not to be understood, of all deeds and conveyances which may be *de facto* registered, but of such only as are authorized and required by law to be registered, and are duly registered in compliance with law. If they are not authorized or required to be registered, or the registry itself is not in compliance with the law, the act of registration is treated as a mere nullity; and then the subsequent purchaser is affected only by such actual notice as would amount to a fraud."

In *Frost against Beekman*, 1 *John Ch. R. page* 300, Chancellor Kent says upon the same subject: "The better opinion in the books seems to be, that it would not be notice, and that equity will not interfere in favor of an incumbrancer who has not seen that his mortgage was duly registered." *James vs. Morey*, 2 *Cow.* 247 ; 2 *Hilliard on Real Property*, 454, *sec.* 43. "In general, the recording of a mortgage is notice both of the debt and the lien to all parties. But without legal acknowledgment or proof, it is a nullity." 1 *Hilliard on Mortgages*, 668 *sec.* 6. Chancellor Kent says: "In several of the States" naming them, "two witnesses are required to the execution of the deed; and probably the deed would not be deemed

sufficiently authenticated for recording without the signature of the two witnesses." 4 *Kent's Com.*504.

The Judge who tried the cause below, in speaking of this branch of the case, says: "The attestation forms no part of the deed, and the notice of record would have been as valid to all intents and purposes if it had presented no attesting witness at all, as it would had it been attested by two witnesses as is usually the case." In this view the Judge clearly erred, and it is difficult to see by what means he could have arrived at such a conclusion. The Statute is imperative that "the deed shall be executed in the presence of two witnesses, who shall subscribe their names to the same as such," and the Register is expressly forbidden to record "any conveyance, mortgage, or other instrument," &c., "unless the same shall have been duly signed and executed, and acknowledged according to law." If there is no necessity for witnesses there can be none for the acknowledgment, or the signature, and the Statute is ignored or repealed. The Court not having cited any authorities in support of his position in this respect, we think he must have overlooked these statutory requirements.

The intention of the Legislature in regard to the necessity of having two witnesses to a deed or mortgage is much strengthened by the succeeding chapter of the old Revised Statutes in which the provision is found, which is published on *pages 405–6 of the compiled Statutes* and which was passed at the same session of the Legislature. In providing for the registration of bonds, contracts or agreements concerning any interest in lands, it expressly declares that one attesting witness shall be sufficient to entitle them to record, proving that greater solemnity was required in the execution of instruments conveying an estate in lands, than such as merely agreed to do so.

We think the record of the Shaubhut mortgage was no notice to any one, and that the mortgage of Thompson subsequently executed and recorded, is entitled to priority over it; no actual notice having been conveyed to Thompson of its existence. The judgment of the Court below is reversed, and the case remanded with directions that a judgment be entered

in that Court which will fully secure the rights of said Thompson under his mortgage of July 15th, 1859, as first incumbrancer of the premises, and the rights of the Plaintiff as second incumbrancer thereof; and that the premises be sold to pay off said incumbrances in their order, with the usual decree in such cases.