### *WILLIAM  R.  ROSS

*v.*

### LEWIS  WORTHINGTON.

Where a mortgage is attested by one witness only, it is in the power of a court of equity in a proper case to remedy the defect, not only as against the mort-

---

*Chief Justice Wilson having been of counsel, took no part in the decision of this case.

gagor, but also against any person acquiring title from the mortgagor with notice.

On the third day of December, 1857, one F. W. H. Rogers and E. W., executed an instrument running to L. W., in form a mortgage of real estate, but attested by one witness only, The instrument was recorded in the book of mortgages, in the proper county, Dec. 21, 1857. On the 12th day of April, 1858, Rogers executed a deed of warranty, running to one Ross, of an undivided half of the same real estate, which deed was duly recorded April 23, 1858. This deed contained the following: "Subject to a mortgage executed by F. W. H. Rogers and E. Worthington to Lewis Worthington, and also a mortgage to A. P. Foster, which said Ross is to pay, or cause to be paid, so that the said F. W. H Rogers shall not be held liable for the payment of any part or parts of the above mentioned mortgages." *Held:* That Ross took his title with actual notice of the existence of the mortgage, and that by Sec. 52, P. 403, Pub Stat., the defective execution of the mortgage was cured as to Rogers and Ross.

*Held:* Further, that by Ch. 41, Laws 1863, the record of said mortgage was legalized.

On the third day of December, 1857, one F. W. H. Rogers and one Edward Worthington, being the owners of certain real estates in Winona county, executed a mortgage upon the same to the defendant, to secure among other demands, the payment of a promissory note of said Rogers and Edward Worthington, to said defendant, dated May 6, 1857, also a promissory note, executed by said Rogers and Edward Worthington, to one Amos Worthington, and endorsed by defendant, dated Nov. 12, 1857. This mortgage was in usual form, and in all respects legal and valid, except that it was attested by only one subscribing witness, and it was recorded in the office of the Register of Deeds for said county, in the book of mortgages, Dec 21, 1857.

Afterwards, and on the 12th day of April, 1858, said Rogers and wife executed a warranty deed of his undivided half of said real estate to the plaintiff, which was duly recorded, April 23, 1858. This deed contained the following clause: "Subject to a mortgage executed by F. W. H. Rogers and E. Worthington, to Lewis Worthington, and also a mortgage to A. P. Foster, which said Ross is to pay, or cause to be paid, so that the said F. W. H. Rogers shall not be held liable for

the payment of any part or parts of the above mentioned mortgages."

On or about the 9th day of Dec., 1862, the defendant commenced proceedings to foreclose said mortgage by advertisement, and on that day caused to be published in "The Winona Daily Republican," a notice of mortgage foreclosure sale, under said mortgage, in usual form, fixing as the time of sale, Jan'y 29, 1863.

On the 23d day of Jan'y, 1863, the plaintiff commenced this action in the district court for said county, to enjoin the defendant from proceeding with the said foreclosure, &c. The complaint sets up the plaintiff's title, sets out the said mortgage *hæc verba*, and claims that the same is not legally attested or recorded; it also alleges that an action was commenced in said court, upon the promissory note in said mortgage described and dated May 6, 1857, and judgment recovered thereon in favor of defendant, against said Rogers and Edward Worthington, April 30, 1858, and that no execution upon said judgment had been returned unsatisfied, in whole or in part; it further alleges that said Amos Worthington commenced an action in said court, against said Rogers and Edward Worthington, on the note described in said mortgage, as executed by said Rogers and E. Worthington, to said Amos Worthington, and endorsed by defendant; that said action was prosecuted to judgment, which was entered in favor of said Amos Worthington, and that no execution upon said last named judgment has been returned unsatisfied in whole or in part.

The answer does not deny the defective attestation of the mortgage; sets up said clause in said deed, and as to said judgments upon portions of the debt secured by said mortgage, alleges, that execution upon the first, was "in fact and in law, returned wholly unsatisfied;" that as to the second judgment, above named, defendant has not and never had any interest therein; that before the publication of said foreclosure notice, he, as endorser upon the said note, paid and took up the same.

Ross v. Worthington.

The cause coming on to be tried at the April Term of said court, 1865, before the court without a jury, a motion was made by the plaintiff for judgment upon the pleadings. The court granted the motion, and ordered judgment for the plaintiff, and that the judgment be to the effect: "that as to one equal undivided part of the real estate described in the complaint, and deeded by F. W. H. Rogers and wife to the plaintiff, nothing was at the commencement of this action, or is now, due or owing to the defendant upon said alleged mortgage, and that said alleged mortgage shall be decreed to constitute no lien or incumbrance thereon as against the plaintiff's title thereto; that the cloud thereon caused by said alleged mortgage be removed, and as to said one equal undivided half part of said real estate, the defendant, his agents, servants and attorneys, and all persons acting under them, be perpetually enjoined from proceeding in the said foreclosure and sale threatened and contemplated as specified in the notice of sale mentioned in the complaint, or from making any sale thereof whatever, under said statute relating to foreclosure of mortgages by advertisement." From the order granting said motion the defendant appeals to this court.

Sargeant, Franklin & Keyes, for appellant.

Berry & Waterman, for respondent.

*By the Court*—Berry, J.—Assuming in accordance with the decisions in *Parrott v. Shaubhut*, 5 Minn. 323, and *Thompson v. Morgan*, 6 Ib. 292, that the instrument on trial in this action, was, at law, invalid as a mortgage at the time of its execution, because attested by one witness only, (without now following those cases further,) it would unquestionably be in the power of a court of equity, in a proper case, to remedy a defect of that character, not only as against the maker of the instrument, but also against any person who acquired title from the maker with notice. 1 Lea. Cas. Eq. 192-3, 195, 198,

558; 2 Lea. Cas. Eq. 34–5, 55; 1 Story Eq. Jur., Secs. 165, 166; *Wadsworth v. Wendall*, 5 Johns. Ch. R. 225; *Schenck v. Ellingwood*, 3 Edw. Ch. 175; Pub. Stat. p. 396, Secs. 58, 59.

1. In this case it appears that one Rogers, together with Edward Worthington, executed an instrument running to Lewis Worthington, the appellant, which instrument was in form a mortgage, save that it was defective because attested by one subscribing witness only. Subsequently Rogers executed a deed running to Ross, the respondent, of an undivided half of the premises attempted to be mortgaged. This deed was duly executed, and contained the following clause : " Subject to a mortgage executed by F. W. H. Rogers and E. Worthington to Lewis Worthington, and also a mortgage to A. P. Foster, which said Ross is to pay or cause to be paid, so that the said F. W. H. Rogers shall not he held liable for the payment of any part or parts of the above mentioned mortgages." In the first place, this clause is an express recognition by Ross of the existence of the defectively executed instrument, and of its nature as a mortgage, and this recognition is contained in a deed duly executed with all the formalities which should have been observed in the execution of the mortgage. So far as Rogers and Ross are concerned, this recognition made in this manner, would seem to be tantamount to a ratification or affirmance of the mortgage. See 2 Selden, 255; 24 N. Y. 172.

In the second place there is no room for doubt that Ross, accepting a deed containing a clause of this kind, took his title with actual notice of the existence of the mortgage, and of the liability of his grantor, Rogers, thereupon. As was remarked in *Thompson v. Morgan*, 6 Minn. 295, it is quite likely that by the acceptance of a deed containing a clause *recognizing a subsisting lien and waiving its defects*—as we think this does—Ross may have estopped himself from questioning the validity of the mortgage, and according to the doctrine of *Burr v. Beers*, 24 N. Y. 178, have made him-

self directly liable to the appellant for the amount of the mortgage debt. At any rate, it is obvious that taking the premises as he did with actual notice of the equities of the appellant against Ross arising out of the execution of the instrument intended as a mortgage, he took his title subject to the same. 2 Lea. Cas. Eq. 33, 37 ; *Hatch v. Morris,* 3 Edw. Ch. 313. It follows from the foregoing considerations, that so much of the order appealed from in this cause as directs judgment to the effect that as to the land conveyed to Ross "nothing was at the commencement of this action or is now due or owing to the defendant upon said alleged mortgage, and that such alleged mortgage shall be decreed to constitute no lien or incumbrance thereon as against the plaintiff's title thereto," and "that the cloud thereon caused by said alleged mortgage be removed," is erroneous.

2. The mortgage having been attested by one witness only, was clearly not entitled to record. *Parrott v. Shaubhut,* 5 Minn. 323.

It could not, therefore, be properly foreclosed by advertisement under the statute (Subd. 3, Sec. 2, p. 644, Pub. Stat.) unless this defect was cured by the statute passed July 26, 1858, (see pp. 403-4, Pub. Stat.,) subsequently to the execution of the mortgage, as well as of the deed to Ross, or by the statute passed March 5th, 1863, after this action was commenced, but before it was brought on for trial. See Laws 1863, p. 83. The statute of July 26th reads in this wise : "All conveyances of real estate heretofore made within the limits of this State, properly sealed and acknowledged with one subscribing witness thereto, shall be legal and valid to all intents and purposes." This law is in its very terms retroactive, but according to high authority not for that reason necessarily invalid. Sedgwick on Stat. and Con. Law, 192, 202, 406, 415, 666, 670 ; *Wilkinson v. Leland,* 2 Peters, 627. See also *Syracuse City Bank v. Davis,* 16 Barb. S. C. 188. "A retrospective statute" says Chancellor Kent, "affecting and

changing vested rights, is very generally considered in this country as founded on unconstitutional principles, and consequently inoperative and void.   But this doctrine is not understood to apply to remedial statutes which may be of a retrospective nature, provided they do not impair contracts or disturb absolute vested rights, and only go to confirm rights already existing, and in furtherance of the remedy by curing defects and adding to the means of enforcing existing obligations.   Such statutes have been held valid where clearly just and reasonable, and conducive to the general welfare, even though they might operate in a degree upon existing rights, as a statute to confirm former marriages defectively celebrated, or a sale of lands defectively made or acknowledged.   The legal rights affected in these cases by the statutes were deemed to have been vested subject to the equity existing against them, and which the statutes recognized and enforced."   1 Kent. Com. 455–6.   See also *Dutch Church v. Mott*, 7 Paige, 82.   In this case the title to certain lands vested in Ross, the respondent, subject to the equity existing against them on account of the defectively executed mortgage.   We think the statute of July 26th, so far as it is applicable to this action, falls within the principles laid down by Chancellor Kent.   It recognizes, and accomplishes for the appellant in a speedy and inexpensive manner, what he would otherwise be obliged to resort to a proceeding in equity to accomplish. It is, however, to be noted that no effect is expressly given by the act of July 26th, to any registration which had been made of the defective conveyance, as in this case, prior to the passage of the act; and we are inclined to hold that it does not legalize such registration.   But the act of 1863 enacts as follows :

" SECTION 1.   That all instruments heretofore made relating to the conveyance of real estate, or any interest therein, within the limits of this State, having only one subscribing witness thereto, shall, if in other respects conformable to law, be

entitled to record with the same effect from the time of the passage of this act, as if attested by two subscribing witnesses.

"SECTION 2. The record of all such instruments heretofore made, shall, from the time of the passage of this act, have the same force and effect as if the same were recorded anew under the provisions of section 1 of this act."

In this case, where the question is as to the validity of the act of 1863 as respects Rogers, the maker of the mortgage, and Ross, his grantee, with actual notice of the mortgage, we see no reason why this act does not also fall within the principles before referred to, as laid down by Chancellor Kent. We think the act, in its application to a case like this, is valid. However, as this act was not in force at the time when the proceedings to foreclose by advertisement were instituted, nor on the day appointed for the sale, the record was, at that time, void; or, in other words, the mortgage was not legally recorded, and so the mortgagee was not authorized to proceed to foreclosure under the statute by advertisement. We think he was properly enjoined from proceeding further on that attempted foreclosure. But the effect of the act of 1863, from the time of its passage, was to render that record valid, and sufficient to satisfy the statute, which makes registration an indispensable prerequisite to foreclosure by advertisement. So much of the order appealed from as perpetually enjoined the mortgagee from making any sale whatever of the mortgaged premises by advertisement under the statute, was, therefore, erroneous.

3. In reference to the judgment recovered by the appellant for a part of the debt secured by the mortgage, the statement that the execution issued thereon "was, in fact and in law, returned wholly unsatisfied," fully meets the requirement of the statute relating to foreclosure by advertisement. As to the other judgment, it appears to have been recovered on a note given to Amos Worthington, on which the appellant, Lewis Worthington, was endorser, and the mortgage in

question was in part given to protect him against his liability on his endorsement. Judgment was recovered by Amos Worthington against the makers. Subsequently, the note was paid and taken up by the endorser and appellant. It is urged that the appellant thereby succeeded to the rights of Amos Worthington. It is difficult to see how he thus succeeded, as he paid the note and not the judgment. This debt (so to speak) originally secured by the mortgage, was an indemnity against a liability as endorser. No proceedings, so far as appears, have been instituted at law by the endorser to recover what he has been compelled to pay on account of his endorsement. The proceedings instituted by Amos Worthington on the note, were clearly not proceedings upon the liability of the makers of the note to Lewis Worthington, and so the fact that no execution had been issued upon the judgment recovered by him, and returned unsatisfied, was not in the way of a foreclosure by the appellant. There are several points found in the briefs of counsel, to which we do not deem it necessary to make any special allusion. The views which we have expressed determine, we think, the substantial matters in controversy. The order appealed from is reversed, except so far as it enjoins the pending foreclosure proceed ings, as to which it is affirmed, and the cause remanded.