R. P. CORYELL v. CHAS. D. HOLMES ET AL.

(March 9, 18—.)

CONVEYANCE OF LAND, REQUISITES OF.

SUBSCRIBING WITNESSES.— Subscribing witnesses not necessary to the validity of a conveyance of land in this state in 1843.

REGISTRATION.— Conveyance proved by one subscribing witness was sufficiently proved to be entitled to registration.

APPEAL from Galveston county. Opinion by QUINAN, J.

STATEMENT.— This was an action of trespass to try title by appellant to recover the southwest quarter of out-lot 13, in the city and county of Galveston, and the only question made by the record, and which is assigned as error by appellant, was the ruling of the court below in excluding the deed from Antonio Officers to J. Rump, because it was not entitled to record without being witnessed by two witnesses.

On the trial below a jury was waived and the case submitted to the court. By agreement of counsel both parties deraigned title from a common source, to wit, The Galveston City Company. The appellants, the plaintiffs below, have made out a perfect chain of title from the records of Galveston county to the appellant, Coryell, provided the deed from Officers to Rump was a valid deed, properly admitted to record, or the record has been validated by subsequent legislation, both of which propositions are maintained by appellant.

The appellees claim title as heirs of Officers. The deed from Officers to Rump bears date 13th of July, 1843, and is signed by P. Edmonds as subscribing witness. It was proved by him as witness before Oscar Farrish, clerk of the county court of Galveston county, and filed for record and recorded on 14th of July, 1843.

OPINION.—To determine the question presented it will be proper to review our statutes upon the subject of registration before and at the time when this instrument was recorded. The first act passed by the Republic of Texas, changing the rule in the conveyance of land, is found in the act of December 20, 1836, entitled "An act organizing the inferior courts and defining the powers and jurisdiction of the same." The thirty-fifth, thirty-eighth and fortieth sections of said act are as follows:

"Sec. 35. The clerks of the county courts shall be the

recorders for their respective counties, and it shall be their duty to record all deeds, conveyances, mortgages and other liens, and all other instruments of writing required by law to be recorded in their offices, which are presented to them; *provided* one of the witnesses of the number required by law shall swear to the signature of the signer or he himself shall acknowledge the same, which shall be certified by the recorder and form part of the record; and all deeds, conveyances, mortgages and other liens shall be recorded in the county where the property is situated."

"Sec. 38. All titles, liens, mortgages or other color of title, before they can be admitted upon record, must be proven by at least two subscribing witnesses, if living in the county, and if not so living in the county, then the handwriting shall be proven, either before some county judge or before the clerk of the county court in whose office such record is proposed to be made; and in all cases the certificate of any county judge, that the said witness appeared before him and acknowledged his signature, or that the handwriting of the same was duly proven, shall be sufficient evidence to authorize the clerk of the county court to enter such title, lien, mortgage or other color of title upon record; and the said clerk for recording the same shall be entitled to charge and receive the sum of twenty cents for every hundred words."

"Sec. 40. No deed, conveyance, lien or other instrument of writing shall take effect as regards the interest and rights of third parties until the same shall have been duly proven and presented to the court, as required by this act, for the recording of land titles."

The next statute we have upon the subject is that of January 19, 1839, which provides: "That it shall be the duty of the clerks of the county courts to record all deeds, conveyances, mortgages and other liens affecting the titles to land and immovable property situated within the same, which shall be presented to them for record; *provided* one of the subscribing witnesses shall swear to the signature of

the signer, or he himself shall acknowledge the same, which proof or acknowledgment shall be made either before some county court or chief justice of the same, or before the clerk in whose office such instrument is proposed to be recorded, a certificate of which shall be made upon such instrument by the proper officer and become a part of the record. And all laws contrary to or conflicting with this act be and the same are hereby repealed so far as they conflict with or are contrary to the same."

On the 16th of March, 1840, the act adopting the common law of England went into effect, and on the same day, also, went into effect the act concerning conveyances, "That no estate of inheritance or freehold, or for a term of more than five years, in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared by writing sealed and delivered. And any instrument to which the person making the same shall affix a scroll, by way of seal, shall be adjudged and holden to be of the same force and obligation as if it were actually sealed; *provided*, the person making the same shall, in the body of the instrument, recognize such scroll as having been affixed by way of seal; nor shall such conveyance be good against a purchaser for valuable consideration not having notice thereof; nor any creditor, unless the same writing be acknowledged by the party or parties who shall have sealed and delivered it, or proved by *two* witnesses to be his, her or their act before the county court of the county in which the land conveyed, or some part thereof, lieth; or in the manner hereinafter directed, and be lodged with the clerk of the county court to be recorded."

By the third section of this act it is provided: "That in no case shall livery of seizin or the placing the purchaser in possession be necessary to pass any freehold estate in lands." By the fourth section it is provided that all bargains, sales and other conveyances whatever of any lands, etc., shall be void as to creditors and subsequent purchasers for value without notice, unless acknowledged or proved

for record and lodged with the clerk for record, " but the same as between the parties and their heirs, and as to all subsequent purchasers with notice thereof, or without valuable consideration, shall, nevertheless, be binding." In the sixteenth section of this act a form of release is given which should be valid to convey lands, " if the same be subscribed by two or more credible witnesses," but it is in express terms provided that "other forms not contravening the laws of the land shall not be invalidated." At the next session of congress was passed the act of limitations, which has been styled a statute of repose, and which, by its twentieth section, was doubtless intended to obviate the difficulties which had sprung up under the conflicting provisions of the registration laws. It is provided by this act: Section 20. Be it further enacted that any grant, deed or instrument for the conveyance of real estate, or personal or both, or for the settlement thereof in marriage, or separate property or conveyance of the same in mortgage on trust to uses, or on conditions, as well as any and every other deed or instrument required or permitted by law to be registered, and which shall have been heretofore registered, shall, from the passage of this act, be held to have been duly registered with the full effects and consequences of the existing laws, provided the same shall have been acknowledged by the grantor or grantors, maker or makers, before any chief justice of the county court, or before any notary public, or before the clerk of the county court in whose office such record is proposed to be made, or proved before such officer by one or more of the subscribing witnesses, and certified by such officer; any obscurity or conflict in the existing laws to the contrary notwithstanding.

And the twenty-first section of the act provides: That every grant, deed or instrument, mentioned in the twentieth section of this act, hereafter to be made and recorded, shall be duly registered in the office of the proper county, upon the acknowledgment of the parties or party signing the same, before the register, or clerk of the county court of

that county, or chief justice of the county, or a notary public thereof, or any associate, or the chief justice of the supreme court, or proved by a subscribing witness before any such officer, and certified by him for record; and if it be so acknowledged and certified there need be no subscribing witnesses.

These are all the provisions of our laws which were in force previous to and at the date of the execution of the deed from Officers to Rump and which affect the questions involved in this case.

From an examination of these provisions of the statutes we think these conclusions fairly deducible:

1. That at that date any instrument in writing purporting to convey lands, sealed and delivered, or using a scroll for a seal and recognizing it to be used as such in the body of the instrument, was a valid conveyance of lands, good against the grantor and his heirs, and against purchasers for valuable consideration who have notice thereof, whether registered or not.

2. That no witnesses were necessary to give validity to the same as a conveyance at common law, and under the statutes of uses the common forms of conveyance were feoffment, gift, grant, lease and release and bargain and sale.

Witnesses were not necessary to any of these forms of conveyance. Rodgers v. Worthington, 11 Minn. 438; 1 Serg. & Rawle, 72; 1 Haywood, 205; 3 Washburn, 247, 358, 275; 2 Blackstone's Com. 307; Comyn's Dig., Fact, B. 4; Thatcher v. Pinney, 7 Allen, 149; Fitzhugh v. Cochrane, 2 Wend. 429; Greenleaf's Cruise on Real Property.

A feoffment conveyed the largest estate in lands; there were no subscribing witnesses to the deed, but it was accompanied with livery of seizin, and by the third section of our statute livery of seizin was abolished. By the first section of the same statute a deed signed, sealed and delivered is clearly recognized as a good conveyance without witnesses, valid against the grantor and his heirs and

those claiming under them with notice. And so by the fourth section of the act the deed of bargain and sale is expressly recognized as a valid conveyance of lands, binding as between the parties and their heirs, and as to all subsequent purchasers with notice thereof or without valuable consideration.

It is true that by the same act "a form or purport of a release" is given which, if executed with two subscribing witnesses, should be a good conveyance in fee, but it is expressly provided, as we have seen, "that any other form not contravening the laws of the land shall not be invalidated." This provision is not imperative or exclusive in its terms. It must be read in connection with the system of laws adopted at the same instant which effected so radical a change in the jurisprudence of the country which recognized other modes of conveying lands, and it was doubtless designed simply to furnish, in the new state of things, a form of conveyance for ready reference and use which would certainly, in cases, be effective. While the first and other sections of the act were copied from the Virginia code, this section of our "act concerning conveyances" was taken almost *verbatim* from the South Carolina act of 1796; with this significant change, that while the South Carolina act concludes: "This act shall not be so construed" as "to invalidate the forms heretofore in use in this state," our statute uses the words quoted: "Any other form not contravening the laws of the land shall not be invalidated."

In Craig *v.* Penson, 1 Cheves, 280, it was held by the court, O'Neal, J., dissenting, that a deed with only one subscribing witness was not a valid deed to convey land; but it will be seen that the decision "turned upon the usage of the country." The opinion says: "It would seem that according to the laws of England subscribing witnesses are not essentially necessary to the validity of a deed;" but it continues: "I have examined many forms of deeds presented by conveyances, and all of them, without exception,

have a clause of attestation in the presence of at least two subscribing witnesses. Such has been the universality of the practice in this country that all my brethren concur in saying that they never saw an effectual deed for the conveyance of land (unless this one be one) which was executed in the presence of subscribing witnesses. An instrument of this kind has been held good as an agreement in writing to authorize equity to direct a specific performance."

It is to be noted that the South Carolina statute, so far as we have been able to find, contains no such provision as the first section of an "act concerning conveyances;" and without this we cannot perceive that the decision of that court is applicable here as of controlling weight; and we think it will be found that in those states in which subscribing witnesses are held to be essential, it is because of some statute which, like our Revised Statutes, now prescribes it to be necessary.

But if we admit that Officer's deed to Rump is not in all respects a regular conveyance, it is certainly a contract respecting lands evidencing the equitable title to the same in Rump. It could be recorded and so have all the incidents and effects as notice of the most regular deed. Sec. 7. It was such an instrument as equity would decree a specific performance of. Under the statute of limitations it would constitute color of title and would avail as a link in a regular transfer under the sovereignty of the soil.

As said by Chief Justice Wheeler in Martin v. Parker[1] "An action of trespass to try title can be maintained in our courts upon an equitable as upon a legal title. And although, after a great lapse of time, a court of equity will not entertain a suit by the vendee against the vendor for specific performance of a contract to convey, yet it is not to be inferred from this that a good and valid title, sufficient in law to enable the holder thereof to maintain and defend an action for the property, if it be wanting in some formality essential to constitute it a legal as contradistin-

[1] 26 Tex., 254.

guished from an equitable title, will in consequence by the lapse of time become inoperative and ineffectual as a title. The application of such a doctrine to a title which invests the holder with the legal ownership and absolute power of disposition of land we think inadmissible." 26 Tex., 254.

If we are correct in these conclusions it would seem to follow that we must look upon the several provisions of our statutes respecting subscribing witnesses to deeds, not as affecting the validity of the instrument, but simply as regulations prescribing the mode to be observed in their registration so as to charge third parties with notice. For this purpose at one time it was necessary to the valid registration of a conveyance of lands that it should be proved by two witnesses before the county court. At another it was required that it should be proved by one of the subscribing witnesses. And at the time of the execution of the deed from Officers to Rump it was sufficient that it be acknowledged by the grantor before some officer authorized by law to take acknowledgments, in which case there need be no subscribing witnesses, or proved by a subscribing witness before such officer and certified by him. The exact words of the act are, "proved by a subscribing witness." Officers' conveyance was attested and proved by a subscribing witness, and we think, coming within the exact terms of the law, it was sufficiently proven to be entitled to registration.

But it is insisted by appellees that from the use of the words "subscribing witness, and one of the subscribing witnesses," in the same act in connection with the registration, we must infer that there must be two witnesses. It may be said that this is the most natural construction of the language, and we may even concede that this was probably the common understanding, but we do not think we are driven of necessity to such an interpretation. The custom had, perhaps, been to secure the attestation of two witnesses; the form given in the statute seems to render it proper, if not indispensable, and the plural, in speaking of witnesses to deeds, would naturally enough have been

43

used. But the phrase used, as we have seen, in the section is "a subscribing witness." The purpose is to prove the instrument for registration. It could undoubtedly be proven upon a trial, and would be admissible upon the oath of one witness to its execution, though never registered. It could be proved for record by one witness. And we are at a loss to conceive why further proof should be required to register than to admit in evidence, or what additional efficacy it could impart to the notice which it was the purpose of registration to effect, that it bore upon its face the attestation of a dozen dumb subscribing witnesses. In view of the mischief which would unquestionably result from the construction contended for by appellee, the litigation which would inevitably ensue, the disturbance and unsettling of the land titles of the country, and the clouds it would cast upon many, and equitable and hitherto unquestioned, titles, we would hesitate long before yielding to it our assent. Menley v. Zeigler, 23 Tex., 88.

But, however this may be, we entertain no doubt that, proven as it was and recorded (if it was imperfectly proven and recorded), it was validated as a recorded deed, and properly admissible in evidence under the provisions of the act of 9th of February, 1860, article 5022. That article reads as follows:

"Art. 5022. All such instruments which shall have been acknowledged or proven before any officer named in the foregoing section of this act, and which shall afterwards be recorded in the proper county, or certified copies thereof, shall be evidence in the courts of this state as full and sufficient as if such acknowledgment had been taken, or proof made, in accordance with existing laws. This act shall not be so construed as to affect or bind in any manner any person or party with constructive notice of the existence of any deed, or other instrument of writing, as a recorded deed or instrument, except in the future and after the taking effect of this act, unless such person or party would have been so affected or bound with such notice had this act never been passed."

This article was designed to heal the imperfections in the registration of instruments recorded before that time. As is said by Wheeler, C. J., in Butler *v.* Dunagan, 19 Tex., 559; in speaking of a similar provision in the law of 1841, which we have cited, " it was a healing and enabling statute and should be construed liberally." And so construing this section with reference to the supposed imperfections in the registration of the Officer deed, we do not doubt it removes all difficulty in the decision of the question presented.

We conclude that the Officer deed was a valid convey- ance of the lands; that it was properly admitted in evi- dence as a recorded instrument.

The judgment of the court below was therefore errone- ous, and will be reversed and the cause remanded.