MARTIN S. JAMES *vs.* AMHERST H. WILDER and others.

## October 5, 1878.

**Misjoinder of Causes of Action—Waiver of Objection.—**Objection to a complaint for misjoinder of causes of action must be taken by demurrer or answer, or it is waived.

**Loss of Interest in Controversy—Dismissal of Appeal.—**Even if a defendant in an action to determine an adverse claim, who has appealed from a judgment of the district court against him on the merits, and for costs, has, by lapse of time, lost all the interest claimed by him in the property in controversy, his appeal will not on that account be dismissed upon the. plaintiff's motion in this court, for the reason that he has at least the right to have the judgment examined for the purpose of having it determined whether it was correct upon the merits, so as to entitle the plaintiff to the costs awarded him.

**Purchase of Land by County at Execution Sale.—** *Williams* v. *Lash,* 8 Minn. 441 (496,) and *Shelley* v. *Lash,* 14 Minn. 498, followed as to the point that it was not competent for a county, prior to 1860, to purchase and hold real estate, except for the public use of the county, and that any purchase, except for such public use, was invalid. The authority given by Laws 1860, *c.* 15, § 2, to a county " to purchase and hold real * * estate for the use of the county," *held,* to be equivalent to the previously existing authority to purchase and hold real estate " for the public use of the county."

**Same—Purchase of Interest of Individual Purchaser at Such Sale.—**H. purchased certain land at an execution sale. The county of Ramsey being the holder of a judgment lien upon said land, H., in consideration of the payment to him by said county of the sum for which the premises were struck off to him, with interest, executed a sealed instrument, whereby he assumed to sell, transfer and convey to said county all his right, title, interest and estate in and to said land, and to assign and transfer to said county the sheriff's certificate of sale issued to him upon his purchase aforesaid, and all the rights, benefits and privileges derivable therefrom. In accordance with *Dickinson* v. *Kinney,* 5 Minn. 332 (409,) H., by his purchase, took an estate in fee in the land purchased by him, subject only to the rights of redemptioners. *Held,* 1, that the county did not acquire this estate, by the transaction between it and H., for want of capacity.

**Same—Estoppel.—**2. That as both H. and the county are to be taken to have known the legal effect of said transaction, it could not operate by estoppel to protect the lien of the county's judgment, or to prevent H. from asserting the estate which he acquired by this purchase.

v.25M—20

Appeal by the defendants Amherst H. Wilder and Channing Seabury, copartners as A. H. Wilder & Co., and by Andrew J. Preston, from a judgment of the district court for Ramsey county, entered upon the report of a referee, in an action brought by plaintiff against them and W. D. Cornish, as administrator of John P. Kilroy, deceased, and others, to determine the adverse claims of the defendants to the north one-third of lots 1, 2 and 3, in block 10, in the city of St. Paul. The facts are stated in the opinion.

*E. C. Palmer*, for appellant Preston, and *W. P. Warner*, for appellants Wilder and Seabury.

The case of *Williams* v. *Lash*, 8 Minn. 441 (496,) was decided under Pub. St. c. 1, § 251, which allowed a county to buy and hold land "for the public use of the county," only, while by laws 1860, c. 15, § 2, by which this case is governed, a county was authorized to purchase and hold real estate "for the use of the county," without other restriction.

The plaintiff cannot raise the question whether the county had power to purchase at the sale of January 25, 1861. That is a matter solely between the county and the state. 3 Washburn Real Prop. (4th ed.) 267; 2 Dillon Mun. Corp. § 444 and note; *Runyan* v. *Coster*, 14 Pet. 122; *Baker* v. *Gee*, 1 Wall. 333; *Myers* v. *Croft*, 13 Wall. 291; *Hayward* v. *Davidson*, 41 Ind. 212; *Ex parte Peru Iron Co.*, 7 Cow. 540; *Vernon Society* v. *Hills*, 6 Cow. 23; *Bogardus* v. *Trinity·Church*, 4 Sandf. Ch. 633, 758. The purchase was valid, at any rate, if made "for the use of the county;" and the legal presumption is that the county bought for such use, in the absence of any evidence that the board of commissioners, by some official corporate act, signified their intention to make some other use of the property. *Gebhard* v. *Eastman*, 7 Minn. 40 (56.)

But if the purchase by the county on January 25, 1861, be held void, still the county acquired a good title by the deed from Hart on August 21, 1861. The county was obliged to protect the lien of its judgment against Olivier from the paramount claim of Hart under his purchase at the execution sale

under his elder judgment.   This could only be done by redeeming from him or by taking an assignment of his rights as purchaser.   The county, whether as purchaser at the sale on January 25, 1861, or, if that purchase was void, then as a lien-holder by virtue of its judgment against Olivier, had a right to redeem from Hart, under Laws 1860, *c.* 87.   That statute makes no exceptions.   Such a redemption would be for the benefit of the county, and the public money so used would be appropriated to a lawful public use.   But if the county had the right to redeem from Hart, the court should give the same effect to its acquisition of Hart's rights as purchaser by the instrument of August 21, 1861, that it would give to an acquisition of those rights by the county by a redemption from him.   If the transaction can be upheld either as a purchase or a redemption, the court should sustain it. 4 Kent, 493; Angell & Ames on Corp. § 153.

If the county took nothing by either of these transactions, then the title remained in Hart, who conveyed to Pritchard, who conveyed to Kilroy, upon whose estate the appellants' judgments became liens.   The plaintiff has no title under the Olivier purchase, and is not in a position to make the point that the land was Kilroy's homestead when the appellants' judgments were docketed.

*U. L. Lamprey,* for respondent.

BERRY, J.   The plaintiff, alleging that he is the owner in fee simple of a parcel of land of which he is in possession, brings this action, to determine adverse claims made to the same by defendants.   When the plaintiff had closed his case, the appealing defendants, Preston and Wilder & Co., moved for a dismissal of the action, for misjoinder of a cause of action to determine the adverse claim made by one, with a cause of action to determine the adverse claim made by the other.   The objection, (if it be one,) not having been taken by demurrer or answer, was waived.   Gen. St. *c.* 66, §§ 74, 77, 78.

The adverse claims set up by the appealing defendants in this action were based upon judgment liens against the parcel

of land of which the plaintiff alleges himself to be owner and in possession. It appeared from the findings of the referee who tried the case, that the judgment of Wilder & Co. was entered and docketed April 18, 1867, and that of Preston on July 5, 1867. When the appeals taken by Wilder & Co. and Preston came on to be heard in this court, at October term, 1877, the plaintiff moved to dismiss the same, upon the ground that the judgments and liens had become extinguished by the lapse of ten years from the time of the entry and docketing of the judgments, no execution having been issued or levied thereon, so that the appellants had ceased to have any lien (if any they ever had) upon the parcel of land in controversy. Whether the position thus taken in support of the motion to dismiss is sound or not, we do not deem it necessary to determine at this time, and upon a motion for a dismissal. The judgment, among other things, adjudges costs to the plaintiff in the sum of $135.67. Even if the defendants have lost their interest in the land in controversy in the manner mentioned, they are still entitled to have the judgment appealed from examined for the purpose of having it determined whether the judgment upon the merits was correct, so as to entitle the plaintiffs to the costs awarded. The case does not stand exactly as it would if the defendants had lost their interest in the subject of litigation by a voluntary settlement, by the parties, of the matter in controversy. In that case, this court might refuse to proceed with the hearing of the appeal, for the reason that if, on settling the matter in litigation, the parties have omitted to settle the costs, it is their own fault. But no such reason is applicable to this case. The motion to dismiss is therefore denied.

It appears that by the judgment in this case, defendants Wilder & Co. and Preston were enjoined from issuing executions upon their judgments. As to what effect the injunctions have upon the liens of these judgments, or the right to issue executions upon them, we are not to be understood as making

,any settled decision, though our opinion was intimated upon the hearing.

We come now to the merits of the case. So far as deemed material to the purposes of this opinion, the facts found by the referee are as hereinafter stated.

On September 1, 1856, a judgment was entered and docketed in favor of the board of commissioners of Ramsey county against Wm. H. Randall. On February 19, 1858, the premises in controversy were sold, upon execution issued upon said judgment, to Olivier. On December 8, 1871, a sheriff's deed upon such sale was made to the heirs of Olivier, who conveyed to the plaintiff.

On September 17, 1850, a judgment was entered and docketed in favor of H. N. Hart against W. H. Randall. On September 15, 1860, the premises in controversy were sold, upon execution issued upon said judgment, to Hart.

On November 15, 1860, a judgment was entered and docketed against Olivier in favor of the board of county commissioners of Ramsey county. On January 25, 1861, the premises in controversy were sold, upon execution issued upon said judgment, to said board of commissioners.

On August 21, 1861, Hart, in consideration of the payment to him by the county of Ramsey of the sum for which the premises were struck off to him, with interest, executed a sealed instrument, whereby he assumed to sell, transfer and convey to said county all his right, title, interest and estate in and to the premises in controversy, and to assign and transfer to said county the sheriff's certificate of sale issued to him upon the sale to him as aforesaid, and all the rights, benefits and privileges derivable therefrom. On December 14, 1861, the sheriff executed to Ramsey county a deed, under the sale to Hart. On January 31, 1862, the sheriff executed to the board of commissioners of Ramsey county a deed, under the sale made to said board on January 25, 1861.

On January 23, 1860, Olivier and his wife executed a power of attorney to Giberton, authorizing him to sell any real estate

belonging to them in this state, and to give deeds therefor. On September 6, 1861, Giberton, assuming to act as attorney under such power, executed a quitclaim deed to Dousman of all the right, title and interest of Olivier and his wife, in or to the premises in controversy; but there was no consideration for such deed. On July 22, 1862, Dousman and wife executed to Ramsey county their quitclaim deed of said premises, purporting to convey to said county all their right, title and interest in or to the same.

On November 11, 1865, the board of commissioners of Ramsey county executed a warranty deed of the premises to Kilroy. On July 30, 1870, Hart quitclaimed the premises to Pritchard, and shortly after Pritchard quitclaimed the same to Kilroy. On April 18, 1867, defendants Wilder & Co. recovered and docketed a judgment against Kilroy. On July 5, 1867, a judgment owned by defendant Preston was recovered and docketed against Kilroy. On June 14, 1872, Kilroy conveyed the south half of the premises in controversy to Lyon. On June 20, 1873, Lyon and his wife conveyed said south half to the plaintiff.

In *Williams* v. *Lash*, 8 Minn. 441 (496,) it was held that under the statute as it read prior to 1860, it was not competent for a county to purchase and hold real estate, except under the statutory provision found in Pub. St. c. 1, § 251, authorizing a county "to purchase and hold, for the public use of the county, lands lying within its own limits;" and that any purchase except for such public use was invalid; and in the same case, "public use" was defined as "that actual use, occupation and possession of real estate, rendered necessary for the proper discharge of the administrative or other functions of the county, through its appropriate officers," as, for instance, the use of such real estate as sites for county buildings. It was also further expressly held that this disability of a county to purchase and hold real estate extended to the case of a purchase at an execution sale upon a judgment obtained by the county against the treasurer and his sureties upon his offi-

cial bond, since there was an absolute lack of power to purchase and hold, except for the "public use" mentioned in the statute. This case was, upon the principle of *stare decisis*, followed in *Shelley* v. *Lash*, 14 Minn. 498. By Laws 1860, *c.* 15, § 2, the statute was amended so as to authorize a county "to purchase and hold real   *   *   estate for the use of the county, and lands sold for taxes as provided by law." The word "public" is here omitted. But we do not think that the omission affects the sense. A county cannot be said to have any private use of real estate. It is a wholly public *quasi* corporation, and its uses of property are wholly public. The counsel for one of the appellants contends that the expression, "for the use of the county" is equivalent to "in trust for the county." But we see no reason why the words "for the use of the county" should in this respect receive any different interpretation from that which has already been put upon the words "for the public use of the county," in *Williams* v. *Lash.* Whether, if the matter were *res nova,* we should agree with the decision in that case or not, we think it ought not now to be overruled.

The application of these views to the case at bar is that the purchase at execution sale by the county board, January 25, 1861; the sheriff's deed, under such purchase, to said board, January 31, 1862; the instrument executed by Hart, August 21, 1861, whereby he assumed to transfer his rights under his purchase at his execution sale to Ramsey county; the sheriff's deed of December 14, 1861, to said county, under the sale to Hart; and the deed made by Dousman to Ramsey county, July 22, 1862, must all be held to have been invalid and wholly ineffectual to vest in the county any estate or interest in the premises in controversy. In all these instances of purchase, transfer and conveyance, there is not only nothing to show that they were made for the use of the county, in the sense hereinbefore attributed to the term "use," but it is quite manifest, as it was in *Williams* v. *Lash,* (see pp. 505–6 of opinion of the court,) and upon similar grounds, that they

were not so made. It follows that the deed of November 11, 1865, from the county board to Kilroy, conveyed nothing.

This brings us to the conveyance of July 30, 1870, from Hart to Pritchard. Under the decision of this court in *Dickinson* v. *Kinney*, 5 Minn. 332 (409,) which, so far as we are aware, has never been disturbed, Hart, by his purchase at his execution sale, took all the estate of Randall (found by the referee to be the fee) in the premises in controversy, subject only to the rights of redemptioners. This estate the county did not acquire by the transaction between it and Hart, for want of capacity. We are unable to see how that transaction could operate in any way to protect the lien of the county's judgment, or to prevent Hart from asserting the estate which he acquired by his purchase. If it could have such operation at all, it must be by an estoppel *in pais*. There is no basis for such estoppel, for both Hart and the county are to be taken to have known exactly what the legal effect of the transaction was. There could, then, be no estoppel *in pais*, within the doctrine of *Commissioners of Hennepin County* v. *Robinson*, 16 Minn. 381, or within the definition given in *Pence* v. *Arbuckle*, 22 Minn. 420, where it is said that "an estoppel *in pais* arises when one, by his acts or representations, or by his silence when he ought to speak out, intentionally, or through culpable negligence, induces another to believe certain facts to exist, and such other rightfully acts on the belief so induced, in such manner that if the former be permitted to deny the existence of such facts, it will prejudice the latter." See also *Plummer* v. *Mold*, 22 Minn. 15; *Shillock* v. *Gilbert*, 23 Minn. 386.

Notwithstanding, then, the transaction between Hart and the county, the estate and title which Hart acquired by his purchase remained in him. By his conveyance of July 30, 1870, Hart passed this estate and title to Pritchard, who subsequently conveyed the same to Kilroy. The judgments against Kilroy owned by defendants Wilder & Co., and Preston, accordingly became a lien upon Kilroy's interest in the

premises, unless Kilroy held the same as a homestead, and therefore exempt from judgment liens.

The referee has found that from a time anterior to the recovery of the judgments aforesaid, and up to the time of the conveyance of the south half of the premises to Lyon, Kilroy lived upon, used and occupied the whole of the premises as his homestead, and that he "lived upon, used and occupied" the other half of the premises as his homestead until his death, on or about November 27, 1872. We think the evidence (although not so explicit as it might be) sustains these findings. That Kilroy owned the premises from the time of the conveyance by Pritchard to him, in 1870, we have already seen. They were, therefore, "owned and occupied" by him, as provided in the first section of the homestead act. It follows that the judgments aforesaid never became a lien upon them, and that, therefore, the defendants, owners of the judgments, have no interest in or claim upon the premises in controversy. The plaintiff, on the other hand, has, upon sufficient evidence, been found to have been, at the time of the commencement of this action, and before and ever since, in the actual and peaceable possession of the premises in controversy, and, in addition to this, he shows a paper title in fee to the south half of the premises, through the deed from Lyon. Upon this state of facts, we see no reason why the finding of the referee, to the effect that the plaintiff is the owner and well seized in fee simple of the premises in controversy, and the further finding that the defendants Wilder & Co. and Preston have no right, interest, or claim, or lien in, to or upon said premises, and the corresponding conclusions of law, should not be sustained.

Two or three exceptions taken by defendants to the admission of evidence by the referee may be briefly disposed of. The deeds from Kilroy to Lyon, and from Lyon to plaintiff, were properly received as evidence of plaintiff's title to the south half of the premises in controversy. The premises conveyed being, as the evidence tended to show, part of

Kilroy's homestead, the homestead law permitted him to make the conveyance, without subjecting them to liens in favor of defendants' judgments.

As to the judgment and proceedings in the action brought by the Olivier heirs against Dousman and others, it is apparent, from the view which we have taken, that they were entirely immaterial in this case, because their only value consisted in their tendency to sustain the title which the plaintiff attempted to derive from the heirs of Olivier. In the view which we have taken, the Olivier title was entirely wiped out by the sale to Hart on his judgment. The Olivier title, therefore, loses all importance. The plaintiff derives no estate whatever from it, and the evidence introduced in its support becomes altogether immaterial; and it is not only immaterial but harmless, because it could have no bearing or effect upon the proof of the Hart title, and that is the title which is sustained.

Judgment affirmed.