ELLEN S. SHEPARD *vs.* COUNTY OF MURRAY, Intervenor.

July 8, 1885.

**Demurrer to Complaint of Intervenor.** — An intervention complaint may be demurred to for its failure to state a cause of action or ground of intervention, as the case may be.

**Counties—Power to Acquire Title to Land.**—Since the passage of Laws 1860, *c.* 15, § 2, amended by Laws 1864, *c.* 23, (and Gen. St. 1866, *c.* 8, § 75,) a county may acquire title to land by taking the same in satisfaction of a lawful claim against its debtor.

Action of ejectment brought in the district court for Murray county against one Malhoit. The complaint of the intervenor denies plaintiff's title, and, among other things, alleges title in itself acquired in the following manner: In August, 1876, one N. P. Shepard, the husband of plaintiff, was county treasurer, and was robbed of the county funds, thereby becoming indebted to the county in a large sum. In March, 1878, an action was commenced against Shepard and the sureties on his official bond, to recover the amount of such indebtedness, which action was afterwards settled by the payment of a certain sum of money, the making and delivery of certain notes, and by the conveyance by the plaintiff and her husband to the intervenor of the land in controversy.

The intervenor appeals from an order by *Severance,* J., sustaining a demurrer to its complaint.

*H. C. Grass* and *Daniel Rohrer,* for appellant.

*John Lind,* for respondent.

BERRY, J. Gen. St. 1878, *c.* 66, § 131, provides that an "intervention shall be by complaint, which must set forth the facts on which the intervention rests, and all the pleadings therein shall be governed by the same principles and rules as obtain in other pleadings." The words "complaint," and "all the pleadings therein," evidently refer. to and allow a course of pleadings analogous to the ordinary pleading in civil actions, including a demurrer to the complaint for its failure to state a cause of action, or ground of intervention, as the case may be.

The land in controversy was in form conveyed to the county commissioners of Murray county, in part settlement of a lawful claim of the county against the county treasurer, upon which suit had been commenced against him and his sureties. It is insisted, upon the authority of *James* v. *Wilder*, 25 Minn. 305, that the conveyance was null and void for want of capacity in the county to take it, and the title attempted to be conveyed by it.

*James* v. *Wilder*, and *Shelley* v. *Lash*, 14 Minn. 373, (498,) followed *Williams* v. *Lash*, 8 Minn. 441, (496,) upon the principle of *stare decisis*, and not upon any approval of the doctrine there announced. That doctrine was that under the then statute, (Pub. St. *c*. 1, § 251,) which authorized a county "to purchase and hold for the public use of the county lands lying within its own limits," the county could not acquire title to lands *except for public use*,—as, for instance, for a site for a court-house or jail,—and that lands bid in by the county at an execution sale upon a judgment in the county's favor were not acquired for public use within the intent of the statute, and that therefore the conveyance of the same to the county was void. The attempted conveyance to the county involved in both *Williams* v. *Lash* and *Shelley* v. *Lash* was made while this statute was in force. In 1860 (Laws 1860, *c*. 15, § 2) the statute was so amended as to authorize a county "to purchase and hold real and personal estate for the use of the county, and lands sold for taxes as provided by law." The sale and conveyance to the county involved in *James* v. *Wilder* took place under *this* statute, but it was held that the words *"for the use of the county"* had the same meaning as the words *"for the public use of the county,"* and that therefore, upon the principle of *stare decisis*, the doctrine of *Williams* v. *Lash*, before mentioned, was applicable to that sale and conveyance also.

In 1864 (Laws 1864, *c*. 23) the statute was again changed, and, as finally amended in 1866, in Gen. St. 1866, *c*. 8, § 75, it authorized a county "to purchase and hold real and personal estate for the use of the county, and lands sold for taxes as provided by law; and to purchase and hold, for the benefit of the county, real estate sold by virtue of judicial proceedings in which the county is plaintiff." In our opinion the latter clause quoted works a radical change in the law respect-

ing the capacity of a county to acquire title to real estate; so that whereas, *prior* to 1864 and 1866, a county could, under the law as laid down by this court, acquire and hold real estate for *public use only*, except (necessarily) such as was acquired upon tax sales, it has by the enactments of those years been enabled to acquire and hold for its own *benefit* real estate bid in by it at execution sales upon judgments by it recovered. That is to say, it may acquire land, not for *public use* merely, but, as any other creditor may acquire it, at an execution sale, to satisfy a judgment. If a county can do this, why should it not, without an execution sale, be allowed to take land from a debtor in satisfaction of its judgment, or of a legal claim upon which a judgment may be obtained? Certainly there is no reason in the nature of things why it should not, nor is this any longer against the *policy* of the law. We are clear that this comes within the equity and spirit of the statute, though not, perhaps, within its precise letter, and therefore hold it to be the law.

Order reversed.