## PERSONAL LOAN COMPANY v. PERSONAL FINANCE COMPANY OF ST. PAUL.
## BENEFICIAL INDUSTRIAL LOAN CORPORATION, INTERVENER.[1]

No. 33,144.

June 19, 1942.

[1]Reported in 5 N. W. (2d) 61.

*Guesmer, Carson & MacGregor* and *Donald F. Pratt,* for appellant.

*Bowen & Bowen,* for respondent and intervener.

HOLT, JUSTICE.

Action to protect a tradename in which the court denied a temporary injunction pending suit and overruled plaintiff's demurrer to intervener's complaint, certifying the questions involved to be important and doubtful. Plaintiff appeals.

Plaintiff and defendant are organized under the laws of this state, and intervener under the laws of Delaware. Defendant has not answered. The complaints of plaintiff and intervener are verbose, the latter covering more than 22 pages of the printed record. Plaintiff's corporate name is the tradename it seeks to protect. The complaint alleges that two persons, engaged in the business of loaning money in small amounts, in 1934 caused plaintiff to be incorporated to take over the business, sets out the changes in the name of the corporation, states its place of business in the city of St. Paul, and that in June 1938 it also established an office in the city of Minneapolis. It further alleges that from its incorporation in 1934 it carried on its business under Mason St. 1927, §§ 7042 and 7043 (the so-called one per cent law),

until its repeal in 1939, and was licensed thereunder so to do; that upon the passage of L. 1939, c. 12 (Mason St. 1940 Supp. §§ 7774-41 to 7774-67) (the so-called small loans law), plaintiff applied for and was granted license thereunder to conduct its small loan business at its St. Paul office, 219 Commerce Building, and at its Minneapolis office, 226 Plymouth Building, and is still so doing.

The complaint then alleges that on May 19, 1939, defendant filed its articles of incorporation and applied for and was granted a license to carry on business under said L. 1939, c. 12, at 6 West Sixth street, St. Paul, and has since carried on its business there. And that on the same date articles of incorporation under the laws of this state of seven other corporations were filed by the same interests or persons who organized defendant to conduct business under c. 12, the corporate names being Personal Finance Company of Minneapolis, Personal Finance Company of Duluth, Personal Finance Company of St. Cloud, Personal Finance Company of Winona, Personal Finance Company of Austin, Personal Finance Company of Rochester, and Personal Finance Company of Mankato; that the Minneapolis corporation was licensed under the name of Beneficial Loan Company, and on or about March 12, 1941, each of said Personal Finance Company of Duluth, Personal Finance Company of St. Cloud, and Personal Finance Company of Winona was licensed to do business under the corporate name. The complaint avers that incorporating and so naming said corporations was a contrivance or scheme to deprive plaintiff of the benefit and use of its corporate name and tradename, and that defendant by its window and neon sign features has continued to deceive the public and divert plaintiff's business to itself and by its conduct has confused the public so that the mail and telephone messages intended for plaintiff go to defendant and vice versa. Plaintiff asks that defendants be enjoined from using the word "Personal" in its name and in advertising its business.

Intervener served its complaint in intervention. Because of its length, only the dominant facts and averments can be referred to.

The theory thereof is that intervener is the parent corporation, and progenitor of over 300 subsidiary corporations organized in 31 states, all doing a small loan business; that some of its subsidiary corporations and intervener have, since 1924, used the word "Personal" in connection with the business and in advertising the same; that during the year 1940 over a million individual loans, amounting to over $141,000,000, were made by intervener's subsidiary corporations; that on March 31, 1940, intervener and its subsidiaries owned outstanding installment notes of about $76,400,000; that intervener has assets in excess of $77,000,000 and has for several years been doing a volume of business in United States and Canada in excess of $100,000,000 annually; that intervener has over 20,000 stockholders; that intervener owns the entire capital stock of its subsidiary corporations. There is no allegation that intervener has or ever had a license to do business in this state, either under L. 1939, c. 12, or under any other law, but it avers that it caused a subsidiary under the name of "Personal Finance Company of America," a Delaware corporation, to make application for license to transact business in this state, and license was issued to it. However, that corporation is not the defendant, nor was it licensed under c. 12. Intervener then alleges that plaintiff wrongfully adopted its name containing the word "Personal," and that it is guilty of unfair competition in so doing; that intervener has, through its subsidiaries, acquired the good will of the public by fair dealing and expenditures of large sums annually in advertising—even up to $1,750,000 in one year—and it asks that plaintiff be enjoined from using the word "Personal" in its name or advertisement, that an accounting be had of the profits plaintiff has received from its unfair use of the word "Personal" in its corporate name and tradename and judgment accordingly, and for such other relief as it may be entitled to.

The appeal presents the question whether or not intervener is entitled to intervene. If it is, the demurrer was rightly overruled, for it is clear that if defendant had interposed a like answer a demurrer thereto would have been futile. In considering

intervener's right to intervene, L. 1939, c. 12, the law under which a small loan business must be conducted, should be kept in mind. Section 2 [§ 7774-42] provides that the applicant for a license to do business under that law must designate the place in the municipality where the business is to be conducted, and the name and address of each officer and director of the corporation, if a corporation be the applicant for a license, and that the applicant has, at the designated place of business, available liquid assets of at least $15,000 to conduct the business. Section 3 [§ 7774-43] provides that the applicant shall file with the commissioner (the commissioner of banks) a corporate surety bond, in which the applicant shall be the obligor, in the sum of $1,000, for the use of the state and any person who may have a cause of action against the obligor.

Section 7 [§ 7774-47] provides that not more than one place of business can be maintained under one license, and "no change in the place of business of a licensee to a location outside of the original municipality shall be permitted under the same license."

Section 21 [§ 7774-61] designates the commissioner of banks the commissioner under the act and authorizes him to make the necessary findings, examinations, and orders to enforce the different provisions of the act, and from his decisions appeals [§ 7774-63] lie to the district court in the county where the licensee has the place of business.

Section 19 [§ 7774-59] reads: "Any person and the several members, officers, directors, agents, and employees thereof, who shall violate or participate in the violation of any of the provisions of Sections 1, 12, 13, 14, 17 or 18 of this Act, shall be guilty of a gross misdemeanor."

L. 1939, c. 12, is now the only law governing the small loan business. It is obvious that the business is local, confined to the community or municipality where the applicant for license designates the office for the transaction of the business to be, and there the license issued must be "kept conspicuously posted." § 5 [§ 7774-45]. No loans can be made at any other place.

Section 4 [§ 7774-44] requires the commissioner to investigate and find as facts,

"(a) that the financial responsibility, experience, character, and general fitness of the applicant, and of the members thereof if the applicant be a co-partnership or association, and of the officers and directors thereof if the applicant be a corporation, are such as to command the confidence of the community and to warrant belief that the business will be operated honestly, fairly, and efficiently within the purposes of this Act, and (b) that allowing such applicant to engage in business will promote the convenience and advantage of the community in which the business of the applicant is to be conducted, and (c) that the applicant has available for the operation of such business at the specified location liquid assets of at least $15,000 (the foregoing facts being conditions precedent to the issuance of a license under this Act)."

There are provisions all through the act indicating that the business thereby licensed is local. If one wishes to conduct business in two or more places in the same city a license must be procured and posted in each place. It is perfectly clear that intervener, which has no license to do business under this act in this state, cannot be convicted of gross misdemeanors for any violations committed by its subsidiary, the defendant. Neither should it be permitted to come into court to fight defendant's battles or carry on litigation in its behalf. If intervener owns defendant's capital stock, it derives the benefit through defendant's conduct of the business it is licensed to do and solely answerable for. Suppose the state had filed information against intervener for violations of any provision of this act by defendant, its subsidiary, would intervener's counsel advise intervener to plead guilty? We apprehend not.

Plaintiff in the reply brief prints a decision of the federal district court of the northern district of Iowa wherein intervener was the plaintiff and Earl L. Kline and one Ellis, doing business under the names of Personal Finance Company and Personal Loan

Society, Inc., were defendants. Intervener's complaint therein is evidently drawn on the same theory as its complaint in intervention here. From Judge Scott's analysis of the complaint in that case, the complaint in intervention here is practically a copy. Intervener may be correct in its claim that Judge Scott's decision is not decisive of the case at bar, for the case was dismissed for want of jurisdiction, it not appearing that the damages sought would amount to $3,000. But the reasoning of Judge Scott, that the parent corporation and its subsidiary are two distinct and separate entities and the damage or injury to the one cannot be considered as that of the other, is pertinent and, with the case therein cited of Cannon Mfg. Co. v. Cudahy Packing Co. 267 U. S. 333, 45 S. Ct. 250, 69 L. ed. 634, is decisive that its complaint in intervention here was demurrable. Our decision in Direct Service Oil Co. v. Honzay, 211 Minn. 361, 2 N. W. (2d) 434, also tends to show that intervener has no right to intervene in the instant lawsuit. Mason St. 1927, § 9263, states when one not a party to a suit may intervene. If not so possessed of the right, the pleading may be attacked by demurrer or by motion to dismiss. This statute is substantially in the same language as G. S. 1878, c. 66, § 131. In Lewis v. Harwood, 28 Minn. 428, 10 N. W. 586, its history is given. If a complaint in intervention shows no right to intervene, it may be dismissed on motion or attacked by demurrer. Shepard v. County of Murray, 33 Minn. 519, 24 N. W. 291; Dennis v. Spencer, 51 Minn. 259, 53 N. W. 631, 38 A. S. R. 499; Seibert v. M. & St. L. Ry. Co. 52 Minn. 148, 53 N. W. 1134, 20 L. R. A. 535, 38 A. S. R. 530.

Intervener has cited over 60 cases besides textbooks and law journals. Plaintiff has called attention to over 35, besides textbooks. Nothing would be gained by an attempt to review or apply them to either plaintiff's complaint or that of intervener. As we see it, the action must be tried as between plaintiff and defendant as to which has the right to use the word "Personal" in its corporate name or in connection with its tradename. At such trial the authorities cited may be of service.

The undisputed showing is that at present there is confusion as to the public. Mail and telephone messages intended for plaintiff go to defendant, and others intended for defendant come to plaintiff. Under the showing, it was an abuse of discretion to deny a temporary injunction pending suit.

The order overruling plaintiff's demurrer to intervener's complaint is reversed, and the order denying plaintiff's motion for a temporary injunction pending suit is reversed with direction to grant such injunction upon the giving of a proper bond by plaintiff.

UPON APPLICATION FOR REARGUMENT.

On July 31, 1942, the following opinion was filed:

PER CURIAM.

Respondents petition for a rehearing. No particular claim is made that the decision is wrong insofar as the intervener is concerned. But it is urged "that the questions relating to the motion for temporary injunction were not fully argued." Plaintiff did not move for a temporary injunction against intervener, but against defendant. Defendant appeared by attorney and opposed the motion, but interposed no answer to plaintiff's amended complaint. As the record in this court stood when the appeal was submitted and the decision was rendered, defendant was in default. The decision was filed June 19, 1942. On June 29, 1942, defendant's attorney sent a letter to the clerk of the court below with a stipulation signed in November 1941 by the attorneys of plaintiff and defendant giving defendant the right to answer within ten days after this court had rendered its decision in the appeal, and requested the clerk immediately to transmit the stipulation to the clerk of this court.

It should be obvious to the able and experienced counsel who represents defendant that the stipulation concerns the future procedure in the court below. It is not a part of the record on this appeal.

A rehearing is denied.