EDWARDS, EXECUTRIX, APPELLANT, VS. P. L. THOM, APPELLEE.

1. Proof by a subscribing witness to a mortgage that he saw the mortgagor sign the instrument and acknowledge that he did so, is not sufficient proof of its execution to authorize its admission to record.

2. The record of a mortgage made upon insufficient proof of its execution does not constitute notice of the mortgage to a subsequent *bona fide* mortgagee for value.

3. A notary public can take proof of the execution of a mortgage of real estate, for record.

4. A *bona fide* mortgagee who has been made a party defendant with the mortgagor to a bill filed to foreclose a duly recorded prior mortgage and has become the purchaser at the sale made under the decree in such suit, is entitled to priority of payment out of the excess of the proceeds of sale as against a mortgage executed before his, but not legally recorded, and of which he had no notice when he took his own mortgage.

5. If a person holding a first mortgage surrenders it, and the promissory note it secures, to a subsequent owner of the land mortgaged, and takes from such owner a mortgage securing both the sum he paid for an assignment of the former mortgage and note and sums of money which he has advanced to such subsequent owner, and the latter has the record of the mortgage cancelled, and delivers the note to the party making it and the first mortgage, such first mortgage will be held to be satisfied as to a subsequent mortgagee for value and without notice, actual or constructive, of the second mortgage.

6. When a decree is so framed as to cover certain charges made by the bill, and put in issue by the other pleadings, but not sustained by the testimony, it should be so modified as to make it cover only the issues sustained by the testimony, if it seems that such modification may, under some circumstances, be essential or material to defendant.

Appeal from the Circuit Court for Alachua county.

Appellee filed his bill in equity in Alachua county Circuit Court April 14th, 1884, against F. L. Selden, and his wife Matilda L., and William Edwards, and J. A. Carlisle, Clerk of the Circuit Court of said county, alleging:

That by deed dated December 30th, 1881, and duly recorded in the said county, Albert P. Acee and his wife Anna P., conveyed to said F. L. Selden, certain lands therein described, situate in said county, and that subsequently by an indenture made January 10th, 1882, and also duly recorded in the proper record book of the county, Selden and

wife mortgaged the same land to secure a promissory note of said mortgagors of the same date in the sum of $3,150, it being part of the purchase price of the lands. That in February 1882, appellee loaned to Selden sums of money aggregating $3,500, upon the express promise of Selden that he would pay off the said indebtedness to Acee and procure a release of his mortgage, and also pay and procure releases of all other liens and incumbrances affecting the property, and would thereupon execute and cause to be executed to appellee, such deeds and assurances as would give him a first lien by way of mortgage upon said property as security for said $3,500. That Selden delayed and put off from time to time the performance of his promise until finally on February 23d, 1883, after much correspondence and repeated remonstrances and demands, appellee received through the mails a letter from Selden, dated Gainesville, Fla., February 19, 1883, enclosing a promissory note for $3,500, without date, signed by Selden and his wife, and payable to appellee and also an instrument of mortgage on the said lands and premises, executed and acknowledged by them but not recorded, and purporting to be a second mortgage of the property subordinate to that made to Acee. That although this mortgage, it not being a first mortgage, did not conform to the agreement existing between appellee and Selden, the former was under the circumstances compelled to accept from Selden the best security then available, but inasmuch as the said promissory note bore no date whatever, and the date of the mortgage was illegible as to the year, appellee sent them back to Selden to be reformed, and procured from him a new note made by the same parties and dated March 14th, 1883, of the same amount, bearing interest from March 1st, 1882, and also a new mortgage of same date upon the same property, and duly recorded on the 15th of March 1883, and likewise professing to be subordinate only to the Acee

mortgage, copies of said two notes and mortgages are annexed as part of the bill.

That Edwards, the father of Mrs. Selden, was during all the above mentioned transactions the attorney and counsellor of Selden, and knew that appellee had made the said advances of money upon the faith of the said representations and undertakings of Selden to give him a first lien on said lands as security for the payment of said advances, but as appellee is informed and believes, Edwards, well knowing the same, fraudulently. and in collusion with Selden and without the knowledge of appellee, procured from Selden an instrument dated October 12th, 1882, purporting to be a mortgage of said lands, and to secure the payment of a joint note of Selden and his wife for $1,585.96, the said mortgage being recorded on October 29th, 1882. That the consideration of this note and mortgage was not *bona fide*, but they were made and given to Edwards without any valuable consideration whatever for the same.

That complainant, the appellee, had at the time he took his said note and mortgage above described, from Selden and wife, no knowledge, either legal or constructive, of the existance of the mortgage made to Edwards.

That on July 6th, 1883, Acee filed his bill in the Circuit Court aforesid against Selden and wife to foreclose his mortgage, his note being then due and only $201.50 having been paid on it. That Acee died in 1883, and Anna P. Acee, his widow and executrix of his last will and testament, was duly made complainant in the cause. That on February 4th, 1884, appellee was, upon his own petition, allowed by an order made in the cause, to appear therein and defend the same, and on the same day he filed his answer admitting the charges in the bill and consenting that a decree be made for the sale of the lands and premises as therein prayed for,

15

and setting forth Selden's indebtedness and mortgage of March 14th, 1883, and praying in the event of any sale being made, the surplus proceeds of the sale, if any, remaining after the satisfaction of Acee's claim, should be applied as far as the same should be sufficient therefor, to the satisfaction of appellee's said claim. That on February 9th, 1884, the executrix obtained a final decree in said cause, and it was provided by said decree that the overplus arising from the sale should be paid into the registry of the Court until the further order of the Court.

That Edwards, knowing of the existence of Acee's suit, having conferred with Acee's solicitor, and having obligated himself to satisfy said decree, yet afterwards refusing and neglecting to do so, and the decree remaining unpaid, the Sheriff of Alachua county levied upon, and, upon due advertisement, sold the mortgaged premises at public outcry at Gainesville, and the appellee became the purchaser, he being the highest bidder, at $8,000, which he has since paid to and the Sheriff made him a deed to the property. That the Sheriff paid the solicitor of the executrix the full amount of her decree and costs and deposited the residue of the money, viz.: $4,293.70, with J. A. Carlisle, Clerk, Register of the Court, pursuant to the said decree and where such residue now is.

The prayer of the bill is: *inter alia* for an account of the amount due complainant by Selden; for a decree that the lien of complainant's mortgage upon said premises was subordinate only to Acee's and that complainant is entitled to precedence over the pretended mortgage of Edwards, and that the latter may be cancelled as to any lien it may be or may have been on said premises. That complainant's mortgage debt, interest, costs and attorneys' fees may be paid out of said surplus in the registry of the court.

Edwards answered the bill.

He admits its allegations as to the deed from Acee and wife to Selden and the mortgage back to Acee, but denies that Mrs. Selden joined in the mortgage. He also denies any knowledge of the other matters alleged in the above 1st paragraph of the bill and says that he does not know whether any such allegations are true further than he learns the same from the bill and exhibits, and that as to them he knows nothing absolutely of his own knowledge and that all he has learned or heard in regard to them is that some time in the latter part of 1883 or first part of 1884 he learned that there was a mortgage on record in Alachua county records from Selden and his wife of the character alleged in the bill and dated March 14, 1883, and that he was astonished to learn of the existence of the same and of said indebtedness; and that he never heard of the other allegations denied or referred to, until he read complainant's bill.

He admits being the father of Mrs. Selden as alleged in the second paragraph of the bill, but denies all other allegations of said paragraph. He avers the facts as to his mortgage to be that on or about April 1st, 1881, when defendant supposed and believed the only lien upon said mortgage property to be the mortgage to Acee, and that the only indebtedness from Selden was the indebtedness due on said mortgage, he learned there was on the property an old mortgage of $600, and interest recorded May 24, 1879, and having also learned that the same was about to be foreclosed against Selden, and desiring to assist him and believing he would be amply secured, he "advanced for the purpose of taking up the same the sum of $650 and paid off and satisfied the same and took as a security of money an assignment from Joseph W. Coburn of his said mortgage." He claims that he has to the amount of said sum of money so advanced to take up said mortgage a prior and senior in-

cumbrance upon said mortgaged property over all the various incumbrances thereon. That about October 12th, 1882, he had an accounting and settlement with Selden and that the latter was found to be due him $1,535.76 for the various sums of money at divers times advanced to Selden, including the $650 above mentioned, and desiring a note as a security for the same, the said note and mortgage in his favor were at his request executed on the day last mentioned and afterwards on the 29th of the same month the mortgage was recorded in the Alachua county records.

When said note and mortgage were executed defendant had no knowledge or suspicion whatever that the complainant had any claim, charges or demands against Selden. That before the commencement of Acee's suit, Acee applied to defendant to assign to him or Selden the Coburn mortgage, and he assigned the same as requested, not knowing at the time of the existence of any claim of complainant in the premises. That the consideration for the note and mortgage made by the Seldens to defendant was *bona fide*, to-wit: money paid out and advanced to Selden as aforesaid.

That defendant's mortgage was legally executed, acknowledged and proven, and recorded according to law, and was from the filing of the same for record, and the record thereof, a lien upon the property and notice to all the world of his rights and equities in the premises.

He avers that about January 16th, 1884, the executrix, by her solicitors, gave notice to defendant's solicitors in said cause that she would apply for an order making this defendant a party in said suit, but this order, as he is informed and believes, was never pressed to a hearing.

He admits that he knew of the existence of said suit, and did confer with Acee's solicitor, but he denies that he ever obligated himself to satisfy said decree. He admits

that he refused to satisfy said decree, and says that the facts upon this allegation are as follows : That when Acee instituted his suit the defendant, not knowing of complainant's claim or mortgage, proposed to Acee to take up and satisfy his, Acee's, mortgage when the same should be sued to a final decree, if he, Acee, would consent not to take a final decree in said cause until a certain future day, the exact day not now remembered, and would transfer to this defendant all his rights and equities in and to said decree. That one of the solicitors, S. Y. Finley, of the firm of Finley & Hampton, to whom this proposition was made declined to accept the same until he conferred with his client, Acee. That after this proposition was made and not accepted, he immediately employed a solicitor to look after and watch said case and his interest in said property. That he never afterwards in any manner or form offered to take up said Acee claim and mortgage, and never did so after learning of complainant's claim. He admits the other allegations of the 7th paragraph of the bill, and with the usual general denial, prays to be dismissed.

This answer was excepted to, and the exceptions were overruled, and afterwards on the 23d of October, 1884, complainant amended his bill.

This amendment alleges the making of the Coburn mortgage of April 16th, 1879, by Acee and wife covering said lands to secure their $600 promissory note and the recording of said mortgage; and the transfer of the note and mortgage to Edwards on April 3d, 1882, and the transfer of the same by Edwards to Selden on April 2d, 1883, and that on the next day Selden marked the said mortgage satisfied upon the records of said county, and as complainant is informed, delivered the note to Acee. That the transfer of the mortgage to Selden was a satisfaction of the same,

he being the owner of the mortgaged property, and that it be so decreed.

Edwards' answer to this amendment admits that he assigned the Coburn mortgage to Selden at the time stated, and that it was at the time alleged satisfied upon the Alachua county records, and that the note was delivered up as alleged. Its other allegations are substantially set forth in the original answer.

There was a replication. Selden having died, the Sheriff *ex-officio* administrator was made a party defendant as such.

Upon hearing, on the pleadings and testimony the chancellor decreed August 14th, 1886, as follows:

1. That $4,518.06 was due appellee by Tucker, Sheriff and *ex-officio* administrator of Selden and Matilda Selden, his wife, and M. L. Selden for principal and interest, and $400 attorney's fees and all costs incurred and which may be incurred.

2. That appellee recover of Tucker as Sheriff and administrator $4,518.06, less $1,993.76 previously on July 3d, 1884, paid to appellee out of the funds in the registry of the court as a part payment of this decree, and the further sum of $400 as solicitors' fees, together with all costs.

3. That the clerk pay to appellee on the above recovery the balance of said funds remaining in the registry of the court, or so much as may be necessary to pay this decree, attorneys' fees and costs.

4. That if the balance is insufficient to pay said decree that complainant, appellee, has judgment as at law against the estate of Selden so much of the amount of this decree as may remain unpaid, &c., &c. That should there be anything left of such surplus after the payment of this decree that the same remain in the registry of the court.

5. That the mortgage of October 12, 1882, made to Ed-

wards, is of no validity and void against the rights and interest of complainant in and to the mortgaged property, and that the clerk do cancel the same of record as prayed by complainant.

From this decree Edwards appealed, but since taking the appeal he has died and his executrix has been made a party in his place.

*J. H. Goss* for Appellant.

The statement contained in appellee's brief, to which the court is referred, is correct—with these exceptions :

It should be stated that the bill was filed against F. L. Selden and his wife, M. L. Selden, mortgagors, and against William Edwards, who claimed to be, and was in point of time as to execution and record of his mortgage, a second mortgagee to the Acee mortgage, and a prior mortgagee to the Thom mortgage on which the suit was brought, all the mortgages being on the same property.

The Acee mortgage was satisfied, and is not involved in the consideration of this case. Under the foreclosure sale of the Acee mortgage the funds were brought into the registry of the court, and the purpose of this suit was to obtain a decree that Thom receive all the money and Edwards receive nothing. Edwards was brought into court by complainant Thom, and the equities of the Edwards and Thom mortgages directly raised and involved by the suit.

The Edwards mortgage was executed on October 12th, 1882.

Probated October 28th, 1882. Recorded November 29th, 1882.

Thom's mortgage was executed March 14, 1883. Recorded March 15, 1883.

Thus it will be seen that the Thom mortgage was exe-

cuted and recorded three and a half months after the Edwards mortgage was recorded, and five months after the Edwards mortgage was executed.

The testimony shows beyond any doubt that the Edwards mortgage was *bona fide*, for a valuable and full consideration, and without any intention on the part of Edwards to defraud Thom, and without even a knowledge on Edwards' part of the existence of any claim of Thom upon Selden, the mortgagor. So the case stood and was determined solely and entirely in the court below, and will do no doubt in this court, upon the sufficiency of the execution and record of the Edwards mortgage.

The execution of the Edwards mortgage was assailed in the bill on two grounds : 1st. Because it was not acknowledged in person before any officer authorized by law to take such acknowledgement, and that J. W. Smith, a Notary Public, who took the oath of the subscribing witness was not authorized to take such proof, not being the officer authorized by law to record the said mortgage, nor a judicial officer of the State of Florida. 2d. Because the said Notary Public, J. W. Smith, was one of the subscribing witnesses to the execution of said mortgage. At the final hearing these additional grounds were taken against the sufficiency of the execution of the said mortgage.

1st. Because the affidavit taken before said Notary did not state that witness saw the mortgagors " execute " or " sign, seal and deliver " said mortgage, but simply states that he saw them " sign the foregoing indenture," and acknowledge they did so for the purpose therein " expressed."

2d. Because the said mortgage itself does not show that it was signed, sealed and delivered in the presence of the witnesses, but simply shows that it was in the presence of the

witnesses. The said mortgage closes in these words : " In testimony whereof, the said parties of the first part have hereunto set their hands and affixed their seals on the day and year first above written, in the presence of J. R. Emerson, J. W. Smith.

" F. LEWIS SELDEN, [SEAL.]

" MATILDA L. SELDEN, [SEAL.]"

3d. Because there was no notarial seal to the signature of the Notary, he simply signing his name " J. W. Smith, Notary Public."

Upon these points the Court held that the Edwards mortgage was not properly executed and proven for record, and not properly recorded, and decreed it no lien, and ordered it cancelled on the records, and that all the money in the registry of the Court be paid to Thom. And from this decree the appeal is taken.

THE LAW OF THE CASE.

The interpretation of the Act Nov. 15, 1828, found in McC's D., p. 215, Sec. 6, is involved in this case ; and first : As to power of notaries public to take probate of deeds. This involves the question what is meant by the words of the Statutes, " or before some Judicial officer of this State." The act evidently contemplated two modes of establishing the execution of deeds, so as to entitle them to record : One by acknowledgment, and the other by proof upon oath of one of the witnesses. Under the act of 1828, no one could take the acknowledgment or proof of the execution of a deed except the recording officer who could administer an oath, or some judicial officer of this State. The spirit and intent of this act was to allow the acknowledgment or proof to be made only before some one outhorized to administer an oath. In 1828 when this act was passed, no one could administer an oath except some " judicial offi-

cer," and the person authorized to record deeds, to-wit: the Clerks of the Circuit Court. The act when it was passed made all persons who could administer an oath competent to take the acknowledgment or proof of the execution of deeds. And at that time it was clear notaries could not; for they had no power generally to administer an oath. The taking of the acknowledgment or proof of the execution of a deed required the exercise of no judicial functions or discretion. If it had been the intent of the Legislature to require the exercise of any judicial functions or discretion, no such power would have been given to the recording officer, for he can exercise no judicial functions or discretion, but it would have been limited to the Courts or judicial officers. What was the evil against which the act was aimed? It was to prevent the record of deeds which had not been duly signed and sealed, and the act provided two modes of preventing this: One by an acknowledgment and one by the oath of one of the witnesess, both to be made before some one authorized to administer an oath. And the spirit and intent of the act was to make any one authorized to administer an oath competent to either take the acknowledgment or proof of the execution of a deed—the Court will realize more fully the force of these views when we show the rule of interpretation hereafter. It is true notaries public could not take the proof of deeds until the power was given them, or a power given them, which by implication and intent, conferred such power upon them. This was done in the act of 1848, Sec. 1, Chapter 8, found in McC.'s D., p. 793, Sec. 3. This act is latitudinous and very full as to the power of notaries public to administer oaths. It declares they are " authorized and empowered to administer oaths *in all cases* in which by law oaths are required to be administered." This

act classes and puts notaries with the Judges and Clerks of the Courts, and *pro tanto*, confers upon them like powers. To this extent they are clothed with judicial powers—an oath is " *required* by law to be administered " in the proof or affidavit of a witness to a deed, and clearly this act confers upon notaries such power. This would seem conclusive without further comment, but to refresh the mind of the Court as to the true spirit and rule of interpreting statutes, and put the question beyond any doubt, the Court is referred to these authorities:

See Kent's Com. Lect. XX, * pages from 462 to 465. 11th Ed. top p. 502–6. From which it is clear that a statute must be interpreted: First, according to the intention of the Legislature. Second. " When expressions of statutes are official or particular, but the reason is general, the expressions should be deemed general." When the term "judicial officer" is used, as in our Statute of 1828, it should be construed to mean any one authorized to administer an oath. Third. When technical words are used and it is clear they were intended to be applied differently from their legal acceptation, they are to be interpreted differently from their technical sense. Fourth. Whenever a power is given by statute (as in this case the power to administer an oath) everything necessary to the making of it effectual or requisite to attain the end is implied." ·Fifth. A statute must be construed to make it remedy the mischief intended to be met.

The duty of taking and certifying the acknowledgment or proof of a deed is ministerial, and not a judicial one. 3 Washb. R. P., 3d Ed., p. 214. Star, p. 590.

Cotemporary construction to have a great weight—Cooley C. L., 4th Ed., p. 82; * p. 67–83.

" Courts in construing a statute should, so far as the lan

guage will admit, give such a construction, as will make it practicable, just and reasonably convenient." Head notes 3, State vs. C. Coms. Jefferson Co., 20 Fla., p. 425, and opinion of court in same case on p. 432, middle of p., quoting from Rosempleanter vs. Roesslle, 54 N. Y., 262. Benton vs. Wickwire, do. 226.

It is a fact, I presume, that the cotemporaneous construction of our two statutes, McC's D., p. 215, sec. 4, and McC's D., p. 793, sec. 3, by the business men and lawyers was, that Notaries had the same power to take and certify proof of the execution of deeds that Clerks of Courts and Justices of the Peace had. Such was the construction of the Statute here, and there are many deeds on record with such proof and certificates.

As to the sufficiency of the affidavits: The word "sign" under the facts and circumstances disclosed by the record, is synonymous with "executed," or "sign, seal and deliver." In the oath the witness refers to and includes the foregoing deed. The deed was before the Notary. The words "in testimony whereof," &c., &c., and the seal attached, were all before his eyes. When the witness swore he saw the grantors "sign the foregoing indenture, and acknowledge they did so for the purpose therein expressed," he had sufficient before him to authorize the probate. The seal is on the deed and was before him, and it declares the parties of the first part affixed their seals. Sec. 2, Wasb. R. P. 272, (5). 9 Cowen, 112, bottom of page.

The Statute requires that the execution of the deed be proved. It does not require or prescribe any particular form of affidavit, or that there should be included in the affidavit, the word "execute," or the words "sign, seal and deliver." It shall be *proved* as in other cases to the satisfaction of the officer. Enough must be shown in the affi-

davit and in the deed which is before the officer to satisfy him that it has been duly executed, and when he is thus satisfied and so certifies, it is good. Where a deed is presented to a probating officer, " sealed " and " signed and delivered," a witness swearing he saw the grantors " sign " the deed, covers the whole ground and is equivalent to the word " execute."

### THE NOTARIAL SEAL.

Our Statute does not require a Notarial seal, and the signature of the Notary with the words " Notary Public " signed after the signature is sufficient.

If the positions taken above be sustained, the rulings of the Court below must be reversed, and Edwards' mortgage be a first lien on the property. And in as much as his mortgage and equities are before the Court, brought there by the complainant, he is entitled to sufficient of the funds to satisfy his mortgage without filing a cross bill. The complainant has dispensed with the necessity of a cross bill by bringing Edwards and all his right, claims and equities before the Court for adjudication.

The first assignment was taken because the decree recites in so many words that Matilda L. Selden is indebted so much. This is error. The whole record shows she is not indebted at all. And under this declaration of her indebtedness a common law judgment or execution could be issued against her if the funds were insufficient to satisfy the Thom mortgage.

### AS TO THE WORD " DELIVER."

The delivery of a deed is not a part of its execution and the word " deliver " need not be in the affidavit or acknowledgment of the deed. The question of delivery is one of fact for the Court, and not one as to the execution for the probating officer. A deed can be properly executed,

though ineffectual, without delivery. So all the officer need recite is that it was "signed and sealed." The seal was on the deed in this case, and all that was necessary was that the witness should say what he did say in an affidavit, that he saw the grantors sign the foregoing indenture for the purposes therein expressed.

*Ashby, Scott & Thrasher* for Appellant.

F. S. Selden, one of the parties defendant to appellee's bill, purchased from one A. E. Acee certain lands described in appellee's bill, and to secure the purchase money thereof he gave a mortgage to said Acee upon said lands on "*January 10th, 1882.*"

At the time this mortgage was given there was a mortgage existing upon said lands prior to and senior to the said mortgage given to Acee.

This prior mortgage was paid up by appellant for his son-in-law Selden, and the said prior mortgage (given by one Jos. W. Coburn) was assigned as security to him, the said appellant.

On the "*12th Oct., 1882,*" appellant had an accounting with F. L. Selden, and there was found to be due from the said Selden to the said appellant the sum of $1,535.76, a part of which was the amount paid out by him to take up the said prior or Coburn mortgage, and on the said "*12th October* 1882," the said Selden and his wife, at appellant's request, executed their promissory note in writing in the sum of $1,535.76 and delivered the same to the appellant and to secure the payment thereof, they signed, sealed and delivered to the appellant a mortgage upon the lands purchased from the said Acee. This deed of mortgage bears the usual attesting clause, as follows:

In testimony whereof the said parties of the first part have hereunto "*set their hands*" and "*affixed their seals*" on

the day and year first above written. In presence of J. R. Emerson and J. W. Smith.

One of the witnesses who signed the deed of mortgage, J. W Smith, was a Notary Public, and on the 28th day of October, 1882, the other witness, J. R. Emerson, personally appeared before the said J. W. Smith, a Notary Public in and for the State and county (of Alachua), and being duly sworn, stated that he saw F. Lewis Selden and Matilda Selden *sign " the foregoing indenture "* and acknowledge that they did so for the purposes therein expressed, and that he, together with J. W. Smith, signed the same as witnesses.

Upon the presentation of this deed to the Clerk of the Circuit Court of Alachua county, Florida, (in which county the said lands were situated) he admitted the same to record on " *the 29th day of October*, 1882."

On the 19th of February, 1883, several months after the execution and recording of the mortgage to the appellant, Selden and his wife executed another mortgage upon the same property to the appellee, P. L. Thom, and the same was recorded on the " *16th day of March*, 1883."

It is alleged by the appellee in his bill that there was fraud and collusion between the appellant and the said mortgagors (Seldens). But this charge is denied in the answers, and there is no evidence adduced to sustain it. Appellant in his answer states positively and emphatically that he had no knowledge of any transaction between Selden and Thom prior to the filing of appellee's bill, and that there was no fraud or collusion between him and the mortgagor, Selden.

The object of the bill of appellee is to have the mortgage of Selden to appellant declared void and of no effect as against the claim of the appellee, and to have the funds arising from the sale of said property under the foreclos-

ure of the Acee mortgage, paid over to the appellee as payment upon his note and mortgage, executed 'four or five months *after* the execution and record of appellant's mortgage.

The Court made the decree prayed for by appellee, utterly ignoring not only the mortgage made to appellant in Oct., 1882, but also the mortgage made to Coburn and assigned by him for value to the appellant, declaring the mortgage to appellant void and of no effect as against the claims of appellee, and ordered the same to be cancelled of record by the Clerk. The decree also orders that if the fund (in the registry of the Court arising out of the Acee foreclosure sale) is insufficient to pay this decree in full then that the said complainant do have his judgment as at law against the estate of F. Lewis Selden, deceased, for such deficit as may remain unpaid, etc., etc.

The grounds upon which this decree of the lower Court was asked for and made, were that the mortgage of appellee, although subsequent in execution and record to the mortgage of appellant, should have the preference for the reason that the mortgage of appellant *was not legally proved for record*, nor properly attested by the witnesses thereunto.

The proof of the execution of the mortgage of appellant was made by one of the witnesses, J. R. Emmerson, before J. W. Smith, *a Notary Public*, instead of before the Clerk of the Circuit Court, the latter of whom appellee claims to be the only officer of the State of Florida authorized by law to take proof of the execution of deeds, with the exception of " Judicial officers."

Now how is the proof made when made before the Clerk? It is provided in Sec. 6, McClellan's Digest, p. 215 that in order to procure the recording of a ⁕ ⁕ mort-

gage the execution thereof shall be acknowledged by the party making the same, or it shall be *proved upon oath* by at least one of the witnesses, etc., etc.   This act of 1828 certainly provided that no persons could either take acknowledgments or proof by oath of witnesses of deeds except the Clerks or some Judicial Officers of the State. These were then and for many years afterwards authorized by law to administer oaths for any purpose; but by the acts of 1845 and 1849 the power and authority to " *administer oaths in all cases* " in which by law *oaths* are required, are extended to Notaries Public and Deputy Clerks.

In the case of McKinnon vs. McCollam, 6 Fla. R.  379, the Court construes this statute of 1845 and uses this language: "Judges and Clerks of the Supreme Court, Circuit Court and Courts of Chancery, Judges of Probate, Justices of the Peace, and Notaries Public are authorized and empowered to administer oaths, *in all cases*, in which by law oaths are required to be administered."   The act of 1845 must be construed in *pari materia* with the act of 1828.

But it is urged that the *execution* of the mortgage was not sworn to by the witness, but only that he saw the mortgagors *sign* the mortgage.   The exact language used by the witness in taking the oath before the Notary Public is that " he saw F. Lewis Selden and Matilda Selden sign the foregoing *indenture* and acknowledge that they signed it for the purposes," etc., etc.   Now is this not an excessive refinement ?   What is the difference between swearing that he saw the paper " executed " or signed and sealed, and saying that he saw the indenture signed ?   An indenture is itself a *sealed* paper.   The signing of a sealed instrument is an adoption of the seal attached thereto.   1 Fla., 37.

The other objection to the proper proving of the execution of the mortgage, i. e., that the Notary who took the

16

proof was himself a witness to the deed, is so futile that we think it hardly deserving a serious reply.

In Dinkins vs. Moore, 17 Ga. 64, it appeared that the deed in question was attested in the presence of one of the subscribing witnesses and a Justice of the Peace, the attestation being in this form: "In the presence of," signed with the names of the witness and the Justice. This was held sufficient to entitle the deed to record on the ground that it was a conclusion of law, from the form of attestation, that the witnesses saw the deed signed, sealed and delivered.

The object of having the execution of deed *acknowledged* or proved upon oath of, etc., is to guard the records from papers that have not been executed by the parties whose names appear thereto subscribed, to keep off of the records fictitious and pretended conveyances. Now that a man is a Notary Public does not render him incompetent as a witness, nor does being a witness make him incompetent to administer the oath to the other witness that they two signed said deed as witnesses thereto. In fact, a deed so attested and proven is entitled to more credit as a valid and *bona fide* instrument than one witnessed and proven in ordinary cases. In this case the Notary himself knew of his own personal knowledge that the oath of the witness Emmerson *was true.*

All of which is respectfully submitted.

*Hampton & Hampton* for Appellee.

This was a suit in equity wherein Pembroke Lea Thom filed his bill to foreclose a mortgage upon real estate in Alachua county, Florida, against F. L. Selden and his wife, M. L. Selden, mortgagors, and Wm. Edwards, a pretended second mortgagee, alleging the following facts, to-wit: That F. L. Selden purchased from one A. E. Acee, December 30,

1881, certain real estate situated in Alachua county, Florida, and executed to his vendor a mortgage for a part of the purchase money. In month of February, 1882, the said Selden procured a loan of $3,500 from P. L. Thom to pay off and discharge this purchase money mortgage, upon his positive assurances that he would so pay off and discharge the sum and would execute and deliver to the said Thom a first mortgage upon and against the said property. Representing to Thom that there was no other liens upon the property except this purchase money mortgage, on 19th. February, 1883, after a year's delay, Selden and wife attempted to execute and send to said Thom a note and mortgage upon said property, purporting to be secondary only to the Acee mortgage. See copy of note and mortgage at pages———— of record. By reason of certain defects therein, Thom returned those papers, and a new note and mortgage were duly executed upon the same property, delivered to Thom, dated March 14, 1883, and duly recorded, March 15, 1883, on the records of Alachua county, Florida. This mortgage purported to be subordinate only to the Acee mortgage; also, on 12th October, 1882, the said Selden fraudulently colluded with his father-in-law, Wm. Edwards, and attempted to make him a mortgage on the same property for $1.535.76. This mortgage purports to have been spread on the records, March 29th, 1882. That Thom had *neither* actual or constructive notice of the existence of Edwards' mortgage. That the Acee mortgage was foreclosed; Thom was made a party upon his own motion; that the property was sold under decree in favor of Acee and the overplus of the proceeds arising from the sale thereof are now in the registry of the Court, to abide the order thereof. That Edwards' mortgage was invalid for that it was never acknowledged or probated for record according

to law. 1st. Because the probate was taken by a Notary Public, who has no authority to take the probate of deeds or mortgages. 2d. Because the Notary who took the probate thereof was, himself, a witness to the mortgage. 3d. The affidavit only states that the witness only *saw the mortgagor sign the mortgage.* The bill prays for an accounting for the fund in the registry of the Court to be paid over to Thom, for cancellation of Edwards' mortgage, and for his (Thom's) mortgage to be decreed to have priority of Edwards' mortgage, because Edwards' mortgage was never properly recorded, as required by law, and because the same was procured by fraud. The bill contained other usual and proper prayers and allegations. Service was made on F. L. and M. L. Selden, and decree *pro confesso* entered against each of them. William Edwards answered the bill, denying all fraud and collusion, and claiming that his mortgage was properly executed and duly recorded. The other allegations in the bill are not denied. Complainant's note and mortgage were admitted in evidence, and other testimony taken in proof of allegations in the bill, as appears in the record. Edwards' mortgage was filed *subject to all legal exceptions or objections as to the validity of the execution or record thereof.*

Final degree was rendered by the Circuit Court on the —————— day of.——————, 1886, directing the fund to be paid over to P. L. Thom, and a cancellation of Edwards' mortgage. From this decree Edwards appealed to this court.

POINTS OF LAW AND CITATION OF AUTHORITIES.

The first assignment is a frivolous one. The decree *is not personal against the wife,* but is a simple finding of what is due on the note and mortgage upon the accounting had thereon. See decree, page 117.

SECOND, THIRD AND FOURTH ASSIGNMENTS OF ERROR.

We discuss these together. It is alleged in the bill, proven and admitted that complainant, (appellee) had *no actual knowledge or notice* of the existence of the mortgage or indebtedness of F. L. Selden and wife to Edwards, appellant. Hence we do not discuss this.

It is a well established doctrine, held by the American and English-courts, *that an imperfect record is no record at all,* and is, therefore, no notice to *bona fide* purchasers and encumbrancers. 20 N. J. Eq., 109 ; 10 Neb., 479 ; 71 Pa. St., 476 ; 24 Miss., 517 ; 46 Mo. 472 ; 37 Ark., 91 ; Jones on Mort. Real Estate, vol. 1, §533.

A mortgage on real estate, to be good or effectual at law or in equity against creditors or *bona fide* purchasers for value without notice, must be duly recorded. McClellan's Digest, Laws of Florida, §6, p. 215.

In order to procure the recording of any deed or mortgage upon any real estate, the *execution* thereof by the party making the same shall be acklowledged by such party, before some officer authorized to take acknowledgment of deeds, *or shall be proved upon oath by at least one of the subscribing witnesses thereto, before the officer authorized by law to record the same, or before some judicial officer of this State.* McC.'s Dig., p. 215, secs. 6 and 7.

A Notary Public may take acknowledgment of deeds or relinquishment of dower. McC.'s Dig., p. 218, sec. 16 ; McC.'s Dig., p. 792, sec. 3.

But in this case there was *no* acknowledgment of the execution of the Edwards mortgage. It was probated by the affidavit of one of the subscribing witnesses. Such probate can only be made before the *recording officer,* or *a judicial officer of the State.* McC.'s Dig., p. 215, sec. 6.

This is the *only statute* regulating what is termed the probate of a deed or mortgage.

A notary public is neither the recording officer of such instruments nor is he a judicial officer. Hence his certificate is void.

We take the further position that the notary public who attempted to take the probate of the Edwards mortgage, was himself a witness to the instrument, and was, by reason thereof, incompetent and disqualified from taking the probate thereof.

We contend further, that the certificate or affidavit of probate of the Edwards mortgage was and is insufficient, in that it only states that the *affiant saw the mortgagors sign* the mortgage. The simple fact of signing a conveyance or mortgage of real estate, is not a compliance with the statute. It must have been duly executed, to-wit: Signed, sealed and delivered. The sealing is absolutely essential to its validity. McC.'s Dig., Sec. 6, p. 215.

All mortgages have priority according to the date of recording. 1st Ohio St.. 116 ; 104 U. S., 428.

The mortgage held by P. L. Thom (appellee) was duly and legally recorded.

This is both proven and admitted.

Hence his mortgage is held to have priority over the Edwards mortgage, which was never legally recorded. An unrecorded or imperfectly recorded mortgage is void as to subsequent purchasers or mortgagee without notice, whose mortgage has been recorded. 42 Am. Dec., 240 ; 20 Cal., 509.

Even if Thom (appellee) had no mortgage he would be entitled to an equitable lien upon the property and fund by reason of the letters written him by F. L. Selden. An agreement to give a mortgage, not objectionable for want of consideration, is treated in equity as a mortgage, upon the principle that equity will treat that as done, which, by agreement, is to be done. This is the doctrine in England

and America.   20 Ohio, 464 ; 21 N. Y., 581 ; 35 Ala., 131.

The appellant (Edwards) has no right to the fund in the court below, for that he has not foreclosed his mortgage, and no accounting has been had, as between himself and the mortgagors.   Even if he was entitled to any equities he could not get them in this proceeding. In order to have obtained any affirmative relief he should have filed a cross bill.   Wooten vs. Bellinger, 17 Fla., 289.

In conclusion, we beg of the court a careful examination . of the Edwards mortgage, touching the imperfect and fatally defective execution thereof, and feel confident that it will be treated as *absolutely void* as to the right of Thom, who was a subsequent incumbrancer without notice.   It is proven and admitted that Thom (appellee) is a *bona fide* incumbrancer ; that his debt is just and should be paid ; and further, that Selden perpetrated a gross fraud and wrong upon him in this transaction. The appellee exhibits a *good and valid* mortgage, duly recorded according to law, the day after its execution, and has been diligent and active in endeavoring to secure his rights under the law, and is entitled to the relief granted him in the Circuit Court below upon every principle of right, justice and equity.

SUPPLEMENTAL BRIEF OF ATTORNEYS FOR APPELLEE.

As to the alleged powers of Notaries Public in Florida to take proof of the execution of mortgages and other deeds.

On behalf of the appellee we submit that a Notary Public is not a " Judicial officer of this State," within the meaning of the act of November 15, 1828, section 4; (McClellan's Digest, chapter 32, section 6, p. 215.)

The counsel of the appellant, while admitting that the authority alleged to be possessed by Notaries Public in Florida to take probate of deeds is purely statutory, never-

theless contend that, inasmuch as by the provisions of the act of 1845, chapter 48, section 1, McClellan's D., Ch. 156, "Oaths," section 3, p. 793, "Judges and Clerks of the Supreme Court, Circuit Court, Courts of Chancery, Judges of Probate, Justices of the Peace and Notaries Public," are "authorized and empowered to administer oaths in all cases in which by law oaths are required to be administered," therefore (to quote from appellant's brief,) "this act classes and puts Notaries with the Judges and Clerks of the Courts, and *pro tanto* confers upon them like powers.

It would necessarily follow from this proposition that all of the officers just enumerated are "judicial officers of this State," having equal and co-ordinate authority and jurisdiction in all cases and matters which are properly cognizable and determinable by Judges of courts upon an examination of witnesses upon oath, that is to say, in all cases at law and in equity.

We deny that the mere power to administer an oath, whether derived from the common law or from statute, necessarily carries with it judicial powers, or constitutes the officer a judicial officer; and we submit, that the unsoundness of the above proposition is demonstrated by the consequences plainly deducible therefrom.

If, however the appellant's contention be not pressed to its ultimate and legitimate conclusion, but be narrowed in its application to the probate of deeds, it is submitted that it is equally untenable.

If Notaries Public are empowered to take probate of deeds by virtue of the provisions of the act of 1845, (McC's D., p. 793,) so likewise is the Clerk of the Supreme Court of Florida.

Furthermore, by virtue of the same act, (if the appellant's contention be correct), any Clerk of the several courts of this State, and their respective deputies may take and

certify proofs of the execution of any deed required by law to be recorded, no matter in what county ; that is to say : The Clerk of the Circuit Court for Duval county may take and certify the probate of a deed required by law to be recorded in Alachua county. It is respectfully submitted, that it was never intended by the Legislature that the act in question should have such operation and effect.

Moreover, if the interpretation of the statutes insisted by the appellant be correct, the officers authorized to take probate of deeds embraces also, by parity of reasoning, Masters in Chancery. In section 4, chap. 18, McC's D., p. 169, it is declared that Masters in Chancery "shall have power to administer all oaths and affirmations *which are required by law*, and to take and certify depositions," etc., etc. Masters in Chancery in this State, particularly when acting as referees, often exercise important judicial functions, and could with much more propriety exercise the powers claimed in this case by the appellant for Notaries ; but, it is submitted, that this Court will hesitate to declare, that such officers of the courts of this State are "judical officers," within the meaning of the act of 1828, (McC's D. p. 215.)

It is proper to call attention to an error in the brief of of the attorney for the appellant Edwards, in the reference to 3 Washburn's Real Property, maginal page of 590. The passage in the book cited is as follows : " The duty, however, of taking and certifying the acknowledgment of deeds is a ministerial and not a judicial one."

The words " *or proof* " which are erroneously printed in appellant's brief just after the word "acknowledgment," do not occur in Washburn in that connection.

It is submitted, however, that the question to be here determined is whether a notary public is a judicial officer of this State.

With regard to the first assignment of error, it is submitted that Mrs. Matilda L. Selden was indebted to Thom by becoming joint maker with her husband of the promissory note for $3,500.00 which was secured by the mortgage to Thom, executed by her husband and herself. Furthermore Mrs. Selden has taken no appeal from the decree of the court·below, and is not before this court. Mrs. Selden not being a party to this appeal, this court will not, at the instance of the appellant, Edwards, notice supposed errors in the decree affecting her interests exclusively.

" An appeal brings up for review only that which was decided adversely to the appellant." Per Waite, C. J., *St. p. 774*; in 104 U. S., 871 ; London vs. Taxing District. Canter vs. Ins. Co., 3 Pet., 318 ; Chittenden vs. Brewster, 2 Wall., 196 ; The Quicksilver, 9 Wall., 665 ; State of Florida vs. Florida Central R. R. Co., 15 Fla., 690, *at pp. 725, 726.*

### THE EQUITIES OF THE CASE.

Long before the making of the Edwards mortgage, the appellee, Thom, had advanced his money to F. Lewis Selden upon the faith of Selden's written promise and undertaking that Selden would secure the repayment thereof by a " first mortgage," and " first lien " on the very land embraced in the two mortgages in question. (See Selden's letter to Thom.)

A court of equity " treats an agreement for a mortgage or pledge of bonds, or other property, as binding, and will give it effect according to the intention of the contracting parties." (Per Mr. Justice Campbell, at page 422 in White Water Valley Canal Co. vs. Fallette, 21 Howard, 414.)

Even if Thom had not afterwards gotten a perfect mortgage, duly executed, acknowledged and recorded, he would be entitled to an equitable lien on the entire fund in the Registry, his equity being prior·in time to the equity

claimed by Edwards. Read vs. Admr. of Simons, 2 Dessaussure, 552 ; Medude vs. Delaire, 2 Dessaussure, 565 ; Execr. of Polony vs. Keenan, 3 Dessaussure, 74 ; Mobile, &c., Railroad Co. vs. Talman, 15 Alabama, 472 ; Rolleston vs. Morton, 1 D. and Warren, 195 (Sugden, Lord, Ch.) ; Herman vs. Hodges, L. R. 16 Eq., 18 ; Johnson vs. Johnson, 40 Maryland, 189 ; 3 Pomeroy Equity Jur., Secs. 1235, 1237. 1 Jones on Mortgages, 162, 163.

RANEY, C. J.: Selden purchased land situate in Alachua county from Acee, and in January, 1882, executed a mortgage to him on the same to secure a promissory note of $3,150, principal representing part of the purchase price of the land. This mortgage was duly recorded in the county records. On October 12, 1882, Selden mortgaged the land to Edwards, and this mortgage was recorded on the 29th of the same month. In March, 1883, Selden executed a mortgage on the lands to appellee, and it was put upon record the same day. In April, 1884, Acee filed a bill against Selden and his wife to foreclose his mortgage and have a sale of the property to pay the indebtedness secured by it. Edwards knew of these foreclosure proceedings, but was not made a party to them. The appellee was, however, made a party thereto upon his own application, and filed an answer in which he admitted the allegations made in Acee's bill, and consented to a decree being made as prayed by such bill, and in his answer set forth Selden's indebtedness and mortgage to him asked that the surplus proceeds of the sale should, after paying Acee's claim, be applied to the payment of his own. A decree of foreclosure and sale was made in April, 1884, and the property was afterwards sold and appellee became the purchaser thereof and obtained a deed thereto, and the surplus proceeds, $4,293.70 were, pursuant to a provision in said de-

cree, deposited with the Clerk of the Court to be held until the further order of the Court.

At this stage of the proceedings the appellee filed in April, 1884, his bill set out in the statement of the case.

The charges of appellee's bill that Edwards' mortgage is not *bona fide*, nor based upon a valuable consideration, and that Edwards had, when he took his mortgage, notice of the loan of money made by appellee in 1882 to Selden on the promise of the security of a lien on the property and those as to fraud or collusion between Edwards and Selden are not sustained by the testimony. It is, however, clear from the evidence that the appellee is a mortgagee, for a valuable consideration, and that he took his mortgage without notice, either actual or constructive, of Edwards' mortgage unless it be that the record of it made in the Clerk's office of Alachua county was constructive notice.

No mortgage of real property is good or effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless it is recorded in the office assigned by law for that purpose. In order to procure this recording, the execution of the mortgage by the party making the same must be acknowledged by such party, or it must be proved by at least one of the subscribing witnesses thereto before an officer authorized by law to take such acknowledgments or proof. Sec. 6, p. 215, McC.'s Dig. By the section just cited, passed in 1828, this acknowledgment or proof had, when taken in the State, to be made before the officer authorized to record the mortgage, or before some judicial officer of the State, but in 1861 it was provided by the 4th section of Chapter 1127, approved Feb. 8, that " notaries public be and they are hereby authorized to solemnize the rites of matrimony, and if *there be any doubt as to their being authorized by the laws of this State to take* the renunciation and relinquishment of dower

*and the acknowledgment of deeds and other instruments of writing for record*, be, and they are hereby fully authorized to do so as amply and as fully as Justices of the Peace and other officers of this State are, and for so doing they shall be allowed the same fees as are now allowed by law for other officers to do so." This section appears as section 3, on page 792 of McC.'s Digest, some of its language having, however, been omitted by the author of that work. This legislation, by its terms, gives power to notaries public to take the *acknowledgment* of deeds and other instruments of writing for record, but we think that proof made by a subscribing witness of the execution of the instrument is as much within the meaning of the statute and the intention of the makers of it as is an acknowledgment by the maker of a mortgage or other instrument of his execution of it. In A. Einstein's Sons vs. Shouse, 24 Fla., we held that the word " proving " in Sec. 1, p. 213, McC.'s Dig., as to the admission of chattel mortgages to record, included in its meaning an *acknowledgment* by the maker. A thing within the intention of the maker of a statute is as much within the statute as if it were within the letter. Riddick vs. Walsh, 15 Mo., 519. The point that a notary public had no authority to take the acknowledgment or proof of an instrument for record is not well taken.

The proof of execution by Selden of the mortgage to Edwards is an affidavit made and subscribed by one J. R. Emerson before J. W. Smith, a Notary Public for the county of Alachua. Emerson's and Smith's names appear as the witnesses to the mortgage. Emerson's affidavit, as certified by Smith, is that he, Emerson, saw Selden and his wife, naming them, " sign the foregoing indenture and acknowledge that they did so for the purpose therein expressed, and that he, together with J. W. Smith, signed the same as witnesses."

As appears above, the requirement of the statute is that the *execution* of the mortgage shall be acknowledged or proved. The proof here is only of the signing. Passing without comment the silence of this proof on the subject of sealing, it is yet true that the delivery of a mortgage is an essential element of its execution. Where an instrument requires a seal the signing, sealing and delivery constitute its execution. There must be proof or acknowledgment as well of the delivery as of the signing, to entitle the instrument to record or to give its record the constructive notice which the statute attaches to a legal record. In Rushin vs. Shields & Ball, 11 Geo., 636, the proof upon which record of the deed had been made was that the subscribing witness saw the grantor " sign and seal the deed for the purposes therein named, and that he also saw " two other persons, naming them, " as witnesses to the same." The court held that delivery was essential to the true execution of a deed and that it would seem therefore that proof of delivery was necessary before the deed could be legally recorded and the admission of the copy in evidence by the lower court was held to be error. The case of Dinkins vs. Moore, 17 Geo., 62, cited by counsel for appellant is not inconsistent with the one just mentioned. In this case the deed concluded : " In testimony whereof I have hereunto set my hand and seal," giving the date " and delivered the property " to the grantee, naming him, " by the symbolic tradition of a penknife." The attestation is as follows : " In the presence of Theodore Guery, Thomas Bivens, J. P." The statute authorized the admission of such instruments to record in either of two ways, viz. : by proof of its execution, or by the official attestation of a magistrate ; and in this case it was done upon the attestation of the Justice of the Peace, Thomas Bivens. The court held

that in the case of Rushin vs. Shields the inference from the omission of a statement in the proof, as to the fact of delivery, was that the subscribing witness who was not a magistrate did not see the deed delivered, but in this case where there was no form of words and the attestation was by a Magistrate, the conclusion of law was that the Magistrate performed the official duty prescribed for him and saw the instrument legally executed, i. e., signed, sealed and delivered.

As was held by us in Einstein's Sons vs. Shouse, *supra*, and will be seen from the authorities there cited, the rule is that a substantial compliance with the requirements of the recording acts is sufficient. § 533 of Jones on Mortgages. We can not, however, supply substantial defects by intendments or presumptions. Bryan vs. Ramerez, 8 Cal., 461; Hindes Lissus vs. Longworth, 11 Wh. 199; Fipps vs. McGehee, 5 Porter, 413; Stanton vs. Batton, 2 Con., 527. There is, moreover, in the body of this mortgage, no statement of delivery, even if the language of the certificate of proof was such as would connect itself with such statement, were it there, and cure what might otherwise be a fatal deficiency.

The certificate as to Mrs. Selden is that she acknowledged that "she joined in the execution and delivery" of the mortgage freely and without fear or constraint of her husband. Her acknowledgment does not do away with the necessity for an acknowledgment or proof as to execution by him, Sanders vs. Pepoon, 4 Fla., 465, nor does it supplement the defect in such proof in this case. The law has given it no such effect. She has no authority to represent him as in McCoy vs. Boley, 21 Fla., 803, where the acknowledgment of one partner was held to be sufficient.

We are unable to conclude that the proof as to Selden's execution of the deed was sufficient to entitle it to record.

Being insufficient the record of the mortgage upon such insufficient proof is not constructive notice of its contents to a subsequent mortgagee. Rushin vs. Shields, *supra;* Bishop vs. Schnieder *et al.*, 46 Mo., 472 ; Jones on Mortgages, §533; Lessees of Huster vs. Fortner, 2 Burney, 39 ; Paul vs. Shaubhut, 5 Minn., 323 ; Blood vs. Blood, 23 Pick., 80 ; 79 N. C., 235.

It is made clear by the pleadings and testimony that Edwards transferred the Coburn mortgage to Selden and the same was satisfied on the records of Alachua county. It was evidently Edwards' intention to surrender this mortgage and rely upon the security of the one made by Selden to him.

As the appellee was a mortgagee for a valuable consideration and without notice, either actual or constructive, of Edwards' mortgage we think he is entitled to priority as against Edwards' mortgage, and that the decree of the Chancellor in giving him this status as to the excess of the purchase money paid for the land was correct. As Edwards was not a party to the Acee foreclosure proceedings we are at a loss to perceive that any harm would have been done Edwards if the Chancellor had awarded him such excess as against Acee's representatives and the Seldens by an order in that suit. Edwards was not making any claim to them, nor had any foreclosure been sought against him.

There is one feature, however, of the decree which we think goes too far, considering the nature of this proceeding. The fifth paragraph decrees that the mortgage given by Selden and wife to Edwards is of no validity and void as against the rights and interests of the appellee in and to the property mortgaged and all the improvements thereon, and it directs the Clerk of Alachua County Circuit Court to cancel the same of record as prayed for in the complainant's bill. The prayer of the bill on this subject is for a

decree that the lien of the appellee's mortgage upon the premises is subordinate only to Acee's mortgage and is entitled to precedence over the pretended mortgage to Edwards, and that the last named instrument may be cancelled as to any lien it may be or may have been on said premises.

As stated at the outset of this opinion, there is a failure to prove that the Edwards mortgage is fraudulent. Its only deficiency is the illegality of the record on account of the deficient proof of execution. The Chancellor might have properly decreed that the *record* of the mortgage to Edwards was illegally made, and of no effect in law or equity and was not notice, either in law or equity, of the the existence of said mortgage, and that Thom took his mortgage for a valuable consideration and without notice of the mortgage to Edwards. This, with the previous provisions of the decree, would have been sufficient, and, in view of the failure of proof mentioned as to certain allegations of the bill, more accurate. As it stands, the decree, when considered with reference to all the allegations of the bill, might be construed to adjudge the mortgage void because fraudulent and collusive and without consideration.

There is no necessity for the cancellation further than an entry may be made on the margin of the record of the mortgage of the effect and date of the decree, if it is deemed desirable.

Our conclusion is, that the 5th paragraph of the decree is erroneous and should be modified as indicated above, and that otherwise the decree, in so far as it is involved in this appeal, should be affirmed. Appellant and appellee Thom will each pay half of the costs of this appeal. It will be so ordered.